Mackiw *v.* Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, Appellant.

628

Argued April 18, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*James C. McCreight,* with him *McCreight, Marriner and McCreight,* for appellant.

*Milton D. Rosenberg,* with him *Bloom, Bloom, Rosenberg & Bloom,* for appellee.

OPINION BY WATKINS, J., September 12, 1963:

This is an appeal from the judgment of the Court of Common Pleas of Washington County, entered on the verdict of a jury, in an action on an automobile insurance policy, in favor of Mary Mackiw, administratrix of the Estate of Edward Mackiw, deceased, the

plaintiff-appellee, and against the Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, the defendant-appellant, in the amount of $1443.61; and from the refusal, by the court en banc below, of motions for judgment n.o.v. and for a new trial.

The action is based upon the claim for collision damage under an automobile insurance policy and the main issue in this appeal is whether or not the policy issued by the company was effectually canceled by the company as provided by the terms of the policy.

Edward Mackiw, the decedent assured, was a member of the Pennsylvania State Police, who insured his automobile with the defendant company. His current policy would have expired on December 31, 1957. On or before November 29, 1957, the company issued and sent to Edward Mackiw, a new policy of insurance covering his Cadillac automobile for a six-month period to begin December 31, 1957 and expire on June 31, 1958. The policy was the standard form with the $100 deductible collision clause. A check for $57.83, dated December 29, 1957, was drawn to the credit of the defendant company by his brother's wife, at the suggestion of the decedent, who gave her the cash. The check was delivered to the agent of the company and was never returned. On January 1, 1958, the automobile was damaged in an accident. The repairs cost $1366.33. The decedent filed with the company the necessary claim for the damages resulting from the accident.

Subsequently Edward Mackiw was accidentally killed and when the company refused payment of the collision claim this suit was brought against the company by Mary Mackiw, his mother, as administratrix of his estate, to recover the costs for the repairs. The defendant company defended on the ground that notice of the cancellation of the policy of insurance had been mailed to the insured on December 16, 1957, to become effective on December 27, 1957.

The burden of proof that the policy was canceled is on the company and this burden, under the terms of the contract, is sustained by proper proof of mailing. The clause in the contract reads as follows: "15. . . . This policy may be canceled by the company by mailing to the insured named in Item I of the Declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing."

In *Verecchia v. De Siato*, 353 Pa. 292, 45 A. 2d 8 (1946), the same question was raised and the evidence is strikingly similar to that in the instant case. The insurance company presented oral testimony of a clerk that a cancellation notice was duly prepared and the notice deposited in the Post Office in due course of office procedure; and this testimony was supported with a postal document certifying to the receipt of certain letters for mailing without knowledge of the contents. In this case the insured denied receipt of the notice. The Supreme Court held, at page 295, that: "The clerk's oral testimony was circumstantially strongly supported by a 'document'—the postal receipt; but this did not withdraw the question of notice from the circle of dispute or controversy. The insurer had the burden of proving the policy had been terminated, and whether the notice had been duly given remained an issue of fact despite the circumstance that the undoubted weight of the evidence inclined toward the insurance company. In other words, the credibility of the clerk's testimony with reference to the notice and the mailing of it was for the jury." The testimony in the instant

case is quite similar except for the introduction of another document, in addition to the postal receipt, to wit, an alleged carbon copy of the notice form. The top half of the document is an exact copy of the notice form, and was typed as a carbon copy when the original notice was prepared; the lower half consists of the official stamped and canceled Post Office Receipt of Mailing and a certificate by the employee that he mailed it.

However, there was still no testimony as to the specific notice of cancellation which the defendant alleged was prepared and sent to Edward Mackiw. The witnesses could not remember the specific notice with the decedent's name on it and were unable to testify that the alleged notice was placed in an envelope and mailed to the decedent, even though his name appears on the certificate. As President Judge CARSON, speaking for the court en banc, said: "The employees of the defendant insurance company could not and did not testify that a notice of cancellation was actually executed and mailed to the decedent. An analysis of the testimony on this subject merely reveals that the procedure followed in accordance with the custom and practice of the office, did indicate that some clerk prepared a number of cancellation notices and some messenger delivered a number of cancellation notices to the post office. The record lacks any positive evidence that the letter to the decedent contained a notice of cancellation." The most that can be said here is what the Supreme Court said in the *Verecchia* case, supra: ". . . that the undoubted weight of the evidence inclined toward the insurance company."

It may seem strange that the strongest language in insurance policies, that provide for cancellation by the mailing of a notice and that evidence of the mailing of the notice shall be sufficient proof of notice, has aroused the most controversy in the various jurisdictions. Most jurisdictions, including Pennsylvania, have adopted the

general rule that the parties may provide by contract, as they do in the modern standard policies, that mailing is sufficient proof of notice and it is not necessary to prove receipt of it.

"Where the so-called 'standard cancellation clause' has been involved, a decided conflict in the decisions exists regarding the question whether actual receipt of the cancellation notice mailed by the insurer constitutes a prerequisite to the cancellation of the insurance." 64 A.L.R. 2d, page 982, 1000.

The majority of the jurisdictions in the United States hold with the view that under the standard cancellation form that was in our policy, proof of receipt is not necessary and proof of mailing fulfills the company's burden. The contrary view is held in California, Michigan, Iowa, Minnesota and Oklahoma, which hold that actual receipt, even under the standard form, is a condition precedent, and required proof.

An examination of some of the cases where this view is held should prove fruitful in the overall discussion of this important case. In *Donarski v. Lardy,* 251 Minn. 358, 88 N.W. 2d 7 (1958), the Court interpreted "sufficient proof of notice" and "sufficient evidence" as follows, at pages 11 and 12 of the opinion:

". . . that mailing is a proper mode of communicating notice of cancellation to the insured, but that it does not thereafter relieve the insurance company of the obligation of establishing that the insured received the notice. It further establishes a rule of evidence entitling a trier of fact to find that an insured does have notice of cancellation when the company introduces evidence of the mailing of notice, but on the other hand it would also entitle the finder of facts to find that the notice was not received where the insured has testified that the notice was not received. In case the latter fact is found, as in the case at bar, it must be held that the policy was not canceled . . . .

"Clearly the object of the insured when he buys a policy of the kind involved here is to receive protection in order that he might fulfill his obligations to those he has injured or damaged through the use of his automobile. The provision in the policy providing for notice of cancellation is obviously to give the insured an opportunity to procure other insurance. If the policy can be canceled at any time by merely depositing notice in the mails with no regard to whether or not notice is actually received, then the object of the notice may be completely nullified and there may be no chance of fulfilling the object sought in obtaining the insurance."

Further, in *Jensen v. Traders and General Insurance Company,* 338 P. 2d (District Court of Appeals of California 1959), the Court said, at pages 520, 521, 522:

"The insurance company argues that the contract is clear and that courts may not rewrite the contracts of the parties. It is difficult to imagine that the standard cancellation clause here involved which has given rise to so many different interpretations by courts is clear to laymen, like the plaintiffs. The plaintiffs here, like most laymen on receiving a policy of insurance, looked at the coverage. Their attention was not called to the fine print. In the instant case, the parties did not bargain for the provisions of the contract. Rather, this is a true 'contract of adhesion' where the insurance company selected the language and the insured is 'stuck' with it. 43 Columbia L.R. 629. It has long been the law that in such situations, the construction more favorable to the insured must be adopted . . . .

"If the public policy of this state were otherwise, as contended by the insurance company, the result in this case, as well as many others, would be inequitable and unjust. For example, automobile insurance could be cancelled while the insured was away on a 10-day vacation; or the company could provide in its policy

that cancellation could be accomplished by merely posting its intention on a bulletin board in its home office. We do not think that the right to fully enter into contracts without impairment of such right demands such results.

". . . The question as to whether the notice was in fact received should have been submitted to the jury with an appropriate instruction. If the notice was in fact received, the cancellation was effective; otherwise not."

Running through these cases is the theory that public policy is involved and this is especially true in the jurisdictions that have compulsory insurance or financial responsibility statutes. It should be noted that under Pennsylvania's Motor Vehicle Safety Responsibility Law, Act of April 29, 1959, P. L. 58, Sec. 1401, 75 PS §1401, it is provided that notice of cancellation must be filed in the office of the Secretary ten days before the effective date.

It is true that in the *Verecchia* case the plaintiff was living and denied receipt of the notice while in the instant case the plaintiff's testimony was not available because of death but from the language of the Supreme Court the proof of notice being dependent upon the credibility of the witnesses involved in the mailing, bolstered by the documentary evidence, still left the question of fact as to whether the notice was mailed, a jury question. The trial judge in the instant case, framed a special finding prepared by the defendant, and submitted it to the jury. It read as follows: "Was the notice of cancellation mailed to Edward Mackiw at 83 Murtland Avenue, Washington, Pennsylvania, at the post office on December 16th, 1957?" The answer by the jury was "No".

The *Verecchia* case did not hold that it was necessary to prove receipt of the notice by the insured and the Supreme Court of Pennsylvania followed the gen-

eral rule that proof of receipt of notice is not prerequi-
site to cancellation. It did hold that the testimony of
the insured that he didn't receive the notice went to
the credibility of the testimony, direct or circumstan-
tial, that the notice was in fact mailed.

There are circumstances in this record that raise
doubts as to the mailing of the notice and the crux of
this case is whether the notice was mailed, not whether
it was received. Once a finding of fact is made that
the notice was mailed the defendant has sustained its
burden of proof. The trial judge affirmed the defend-
ant's points for charge as follows: "No. 6. If you believe
that the notice of cancellation was prepared by Mrs.
Nesbitt and carried to the Post Office by Mr. Artman
and received and placed in the mail by Mr. Concannon,
then your verdict must be for the defendant, regard-
less of whether or not said notice of cancellation was
ever received by Edward Mackiw."; and also No. 5
as corrected, which reads as follows: "You are instruct-
ed that it is not necessary that the plaintiff, Edward
Mackiw, received notice of cancellation and the testi-
mony to that effect only bears on the credibility of the
Postal Clerk as a witness. Such testimony is relevant
only to the question of whether or not the notice of can-
cellation was delivered to the Postal Clerk and placed
by him in the regular course of mail to the insured at
the address stated in the policy. It is possible that the
notice could have been mailed and still not delivered
by reason of loss in the course of mail."

The policy in this case was for a 6-month period.
It was a new policy. It is indicated that the decedent's
automobile was insured by the defendant company by
a policy that was due to expire on December 31, 1957.
The new policy was to begin on the expiration of the
old. There is nothing in the record as to the reasons
for the attempt to cancel. The date of the notice and
the effective date of cancellation were both prior to the

effective date of the new policy, so that, if canceled, the contract never went into effect.

The decedent's sister-in-law testified that she wrote a check for $57.83 to pay the premium on December 29, 1957; and that the decedent had given her the cash and ,she then sent her own check to Joseph J. Papa, who at the time was a duly authorized subagent of the company. Joseph Papa testified that he had received the check on December 31 or January 2. It was dated December 29, 1957 and the payee was the Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company. It was not known why the check was not cashed but it was not returned. This was several weeks after the alleged mailing of the cancellation notice. It does seem highly improbable that a Pennsylvania State policeman would have paid a premium on a policy already canceled and is circumstantial evidence from which the jury might infer that he never received it and so attacks the credibility of those claiming that it was mailed. The form filled by the decedent with the company reporting the accident and making claim for the costs of repairs was made subsequent to the alleged cancellation and raises the same question.

.The trial of this case was complicated because of the evidence Act of May 23, 1887, P. L. 158, 28 PS §322, commonly referred to as the "Dead Man's Rule". At first the trial judge sustained objections to all testimony covered by the statute so that vital testimony offered by each side was rejected. However, he later ruled that the plaintiff on rebuttal had waived the benefits of the Act and so permitted both sides to present testimony previously rejected. The court in its charge went into a detailed explanation to the jury as to side-bar conferences and the admission and rejection of testimony involved in the Dead Man's Rule. This was certainly unnecessary and unwise. Lawyers have enough trouble understanding this Rule without

confusing laymen with it but we cannot see how it could possibly so prejudice the defendant as to be fundamental and reversible error.

Testimony as to the receipt of the notice can only go to attack the credibility of those testifying as to its mailing and the court below properly struck down the evidence of the two witnesses who had testified that they were close to the decedent and if the letter of cancellation had been sent they would have seen it or this decedent would have told them of it. The entire testimony of Albert K. Mason was excluded; some of Walter Mackiw's testimony was excluded. Walter's testimony concerning the receipt of the notice was properly excluded; however, his testimony concerning the repairs to the car and its payment and the check in payment of the premium was admitted.

The court, however, refused to charge that: "You are instructed that the opinion of the witnesses that they would have known of any cancellation because Edward Mackiw would have told them, has no value and no probative value as to the issues in this case and should be disregarded by you in arriving at any verdict." He felt that this charge might confuse the jury, how, we are unable to comprehend, but he went even further than that by charging that he ruled the testimony of both witnesses, as to the notice of cancellation not being received through the mails, as competent, although he had clearly excluded it in the trial record. The ruling of the court below as to the testimony of Mason and Mackiw as to the receipt of the notice was clearly correct. Such testimony was worse than hearsay. Such testimony as "Did Edward Mackiw at any time during December of 1957, before his accident, inform you that his policy had been cancelled?" The court permitted both Mason and Mackiw to give similar evidence concerning the cancellation and then quite properly struck it out.

In *Geiser Mfg. Co. v. Frankford Twp.*, 40 Pa. Superior Ct. 97 (1909), this Court held it to be reversible error for a trial judge, after having excluded certain evidence and directed the jury to disregard it, to refer to such testimony again in answering a point. And we said in that case at page 104: "After evidence has been improperly received, it is always a grave question whether striking it out and directing the jury to disregard it, completely obliterates the effect of it. Why the court after having thus undertaken to repair the error in admitting the testimony, saw fit to refer to the conversation in the answer to the point, we are unable to say."

The court below went even further, in this case, by discussing the testimony generally, as though competent, in the charge, and then discussing it in his opinion as follows: "They saw him (Mason), they heard his searching cross-examination by defendant's counsel and the witness undoubtedly convinced them that he was truthful." Further in the charge he indicated to the jury that his ruling striking out the testimony "may have been too broad".

Under such circumstances we reluctantly must hold that the court below abused its discretion in denying defendant's motion for a new trial.

Regardless of the above disposition concerning prejudicial errors as to testimony, we must also agree with the defendant's contention that the issue of damages was not properly proved or properly submitted to the jury. The court below, in effect, held that it is no longer necessary to prove a repair bill or alleged automobile damages. It is certainly a time saving practice, and one recommended to be followed, that pecuniary damages be agreed to by the parties but it is still the law in Pennsylvania that on a claim for pecuniary damages to an automobile the evidence must fix the actual loss with reasonable precision. *Loughery v. Barnes,*

181 Pa. Superior Ct. 352, 124 A. 2d 120 (1956). Where the damage is based on the actual cost of repairs the competent testimony is that of one who made or supervised the repairs and can testify to the costs, their necessity and the reasonableness of the labor and material required. As we have already suggested that such proof may be waived by agreement or by failing to make timely objections as in *Loughery v. Barnes,* supra, but damages are not presumed and the burden of proof is on the plaintiff.

The only evidence presented in this case as to the damages is the bill for $1366.33 and that it was paid by the plaintiff. There is no evidence describing the damages and, although the court talks about a picture of the car, such picture does not appear in this record. There is not a word of testimony as to the necessity of the repairs; or the reasonableness of the cost of the repairs. The defendant admitted it was in an accident and was damaged but strenuously objected to the testimony concerning the payment of the bill and its admission into evidence. The plaintiff's witness testified that the bill was for repairs of damages sustained in the accident. The jury had nothing before it except a receipted bill and nothing from which the extent of the damage could be determined, the necessity of the repairs and the reasonableness of the charges made.

We also agree with the contention of the defendant that the court's charge concerning damages amounted to binding instructions, as follows: "The evidence submitted for your consideration of the actual damage, if I understood it correctly, was $1,366.33. From this, if I understand correctly, if you would find for the plaintiff you would have to deduct $100.00 under the terms of this particular policy, and that would reduce the claim to $1,266.33. However, the money, if it was due, should have been paid, and not having been paid, you are instructed, if you find for the plaintiff, accord-

ing to the rules which we will later give you, you would find that that money was owing on January 1, 1958, and your verdict would be in that amount." The defendant took a special exception to this charge.

Accordingly the judgment of the court below is reversed and a new trial granted.