**FARMERS INSURANCE GROUP, Appellant,**

v.

**Keith MERRYWEATHER and Eloise Merryweather, and Allstate Insurance Company, Intervenor, Appellees.**

**No. 55936.**

Supreme Court of Iowa.

Jan. 16, 1974.

Rehearing Denied March 18, 1974.

A. Fred Berger, Sr., and A. Fred Berger, Jr., Davenport, for appellant.

Betty, Neuman, McMahon, Hellstrom & Bittner and Thomas F. Daley, Jr., Davenport, for appellee Allstate Ins. Co.

McCORMICK, Justice.

This appeal involves an insurance coverage dispute. Plaintiff Farmers Insurance Group (Farmers) brought a declaratory judgment action alleging it had canceled its motor vehicle liability insurance policy on a Chevrolet pickup truck owned by defendant Eloise Merryweather prior to April 20, 1969, when the truck, driven by defendant Keith Merryweather, was involved in an accident with another vehicle. Intervenor Allstate Insurance Company (Allstate) entered the action in Merryweathers' behalf because it provides uninsured motorist coverage of that other vehicle.

The case was tried to the court at law. Trial court held the Merryweather truck was insured by Farmers at the time of the accident. We affirm.

Several established principles fix the scope of our review. Since this is a law action our review is not de novo but only on errors assigned; trial court's findings of fact are equivalent to the special verdict of a jury; if supported by substantial evidence they will not be disturbed; we view the evidence in its light most favorable to the judgment, whether contradicted or not; the findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judgment. Frantz v. Knights of Columbus, 205 N.W.2d 705, 708 (Iowa 1973); Reichle v. Zeman, 204 N.W.2d 636, 637 (Iowa 1973); Dobson v. Jewell, 189 N.W.2d 547, 550 (Iowa 1971).

These principles do not preclude inquiry into whether trial court applied er-

roneous rules of law which materially affected its decision. We are not bound by trial court determinations of law. Frantz v. Knights of Columbus, supra; Hensley v. Aetna Casualty and Surety Company, 200 N.W.2d 552, 553 (Iowa 1972).

The evidence will be outlined here in its light most favorable to the judgment. The events could fairly be described as a comedy of errors, were it not for their serious consequences. In August 1968 the Merryweathers maintained residence in Provo, Utah, though Mr. Merryweather was working in other states. Mrs. Merryweather held title to two vehicles, a Ford car and a Chevrolet pickup truck. She applied through Farmers' agent in Provo for liability coverage on the vehicles, giving him their Utah address and her husband's employment address. She did not then know they were going to change their place of residence.

The agent told Mrs. Merryweather the policies would have a six-month premium period. If she paid one-third of the premium with her application they would have 60 days in which to pay the balance. The total premium was $69.70. Mrs. Merryweather paid $23 and was told the balance due was $46.70. The agent did not tell her how he applied the payment or what the premium balance was on the individual policies. In fact the premiums were $47.20 on the Ford policy, to which the agent applied $15, leaving a balance on it of $32.20, and $22.50 on the Chevrolet policy, to which the agent applied $8, leaving a balance on it of $14.50.

About Labor Day in 1968, with one week advance planning, Mrs. Merryweather and the children moved to Moline, Illinois, to join Mr. Merryweather in establishing residence there. A sister of Mrs. Merryweather moved into the Provo home the next day. She had instructions to forward the Merryweather mail to their Moline address. Forwarding instructions were not given directly to the post office until later. Farmers' agent in Provo testified he mailed the policies to the Merryweathers'

Provo address about September 10, 1968, by regular mail, and they were returned by the post office. He filed them away.

After her arrival in Moline in September Mrs. Merryweather went to Farmers' agent in Moline, notified him of their move to Moline, and requested that he check into the fact their policies had not been delivered.

Farmers claims it mailed a notice to Merryweathers at their Provo address by regular mail September 19, 1968, that their Chevrolet policy would be canceled October 3, 1968, unless they paid the entire $14.50 balance by that date. Merryweathers did not receive it, but Farmers assert it was not returned by the post office.

On September 26, 1968, not knowing the individual policy premium balance and not remembering the total premium balance, Mrs. Merryweather, using her Moline return address, mailed a payment of $20 to the Provo agent of Farmers without specifying how it was to be applied. The agent on his own initiative applied only $4.50 to the Chevrolet policy, even though it was purportedly in default, leaving a balance on it of $10.00. He applied the remaining $15.50 to the Ford policy, leaving a balance on it of $16.70. On October 4, 1968, Farmers considered the Chevrolet policy canceled. On October 20, 1968, Mrs. Merryweather again using her Moline return address, mailed another $17 directly to Farmers in Pocatello, Idaho, thinking that amount approximated the total premium balance. She believed if she was mistaken she would receive either a refund or bill for the difference.

Shortly thereafter Merryweathers received a check for $3.39 from Farmers and assumed it was a refund from the $17 payment. In fact it was a refund of unearned premium on the Chevrolet policy. It had been mailed to their former residence in Provo by Farmers about October 15, 1973, and was forwarded to them. The envelope also contained a printed form notifying them the Chevrolet policy had been can-

celed October 3, 1968, but could be reinstated by payment of $13.39 within 60 days of October 3, effective the date payment was received. They read the document as showing what they owed prior to the $17 payment.

By the time the $17 payment actually was processed by Farmers its computer showed only the Ford policy in the Merryweather name, and the payment was applied to its $16.70 premium balance. The 30 cents extra was credited toward the next policy period.

On December 4, 1968, Farmers mailed a notice to Merryweathers at the Provo address that they owed $5.22 because of loss of "two-car discount." When they received it Merryweathers construed this amount to be an additional premium owed because of change of location of the vehicles. They paid the $5.22 to Farmers' Moline agent on December 28, 1968.

Farmers' records were changed to show Merryweathers' new address on December 16, 1968, when the Moline agent received the policy on the Ford. Merryweathers paid the renewal premium on the Ford February 19, 1968. Mrs. Merryweather asked the Moline agent to check on why she had not received a bill for the renewal premium on the Chevrolet policy. She wrote two letters to Farmers' Aurora office with the same inquiry. Before she received any response the Chevrolet was involved in the accident of April 20, 1969.

Trial court found Farmers did not meet its burden to prove effective cancellation of the Chevrolet policy and also found the policy was not in default on September 19, 1968, when Farmers said it mailed notice of cancellation to Merryweathers.

Farmers assigns three errors, (1) the court's order denying permission to amend, the petition on the first day of trial, (2) the court's finding the policy had not been effectively canceled, and (3) the court's finding the policy was not in default on the date cancellation was attempted. Since our answers to the first two assignments are determinative, we do not reach the third.

I. *The amendments.* Farmers' petition for declaratory judgment was filed August 6, 1969. Pleadings were initially complete December 18, 1969. Discovery ensued. Farmers' counsel was ill for some time. The case came on for trial December 17, 1971. At that time Farmers asked leave to amend its petition to add two new divisions, one alleging fraud by Mrs. Merryweather in not telling the agent in Provo at the time she applied for the policies that they were going to move, and the other alleging expiration of the Chevrolet policy for failure to renew it.

After an extensive hearing during which evidence was taken, the trial court denied the amendments as untimely.

■ We have said allowance of an amendment is the rule, not the exception; however, an amendment on the eve of trial should be denied as untimely if it materially changes the issues involved; and a trial court has broad discretion in permitting or denying amendments; unless that discretion is abused we will not interfere. Board of Adjustment of City of Des Moines v. Ruble, 193 N.W.2d 497, 507 (Iowa 1972).

■ As to the amendment alleging fraud there is some basis in the record for Merryweathers' contentions that Farmers had the information on which that theory was pleaded well before trial and that Merryweathers would need additional discovery to prepare themselves to defend against it. Farmers suggests the case could have been continued. However, there comes a time in a lawsuit when the parties should try their case in order to settle their rights and obligations and make way for other cases to be tried, and we believe trial court was justified in finding the time had come for trial of this case.

It appears from the record the theory of policy expiration was also available to Farmers long before. Even though that

theory may not have required additional or different evidence, it did present a materially new issue, and the delay in tendering it may well have affected Merryweathers' ability to raise and pursue appropriate legal defenses. See Smith v. Village Enterprises, Inc., 208 N.W.2d 35, 37 (Iowa 1973).

Although Farmers' counsel was ill part of the time before trial, the record does not show this prevented the amendments from being offered earlier.

Farmers has not shown trial court abused its discretion in denying the amendments.

II. *Cancellation.* Trial court found Farmers failed to plead and prove Utah law which governed the cancellation issue. The court held Utah law was therefore presumed to be the same as Iowa law and found Farmers did not meet its burden to prove effective cancellation of the policy under Iowa law.

Farmers contends, alternatively, it did prove effective cancellation both under Utah law and Iowa law.

■ Farmers argues there is no applicable Utah statute and under Utah common law its policy provision for notice of cancellation by ten days written notice mailed to the policy address controls. The policy makes such mailing "sufficient proof of notice." As previously noted, Farmers asserts (although trial court did not so find) such notice was sent by ordinary mail to Merryweathers September 19, 1968, telling them their Chevrolet policy would be canceled October 3, 1968, for nonpayment of premium. The fatal deficiency in this reasoning is that the record is devoid of any evidence to prove Utah law. See Code § 622.61; In re Estate of Drumheller, 252 Iowa 1378, 110 N.W.2d 833 (1961). Therefore Utah law is presumed to be the same as Iowa statutory and common law. Zeman v. Canton State Bank, 211 N.W.2d 346, 349 (Iowa 1973). Because of this

presumption trial court did not err in deciding the issue under Iowa law.

Farmers' contention regarding compliance with Iowa law is equally tenuous. It acknowledges Selken v. Northland Ins. Co., 249 Iowa 1046, 90 N.W.2d 29 (1958), cited by trial court in support of its holding, puts the burden of proving cancellation on the insurer and requires that a cancellation notice be received to be effective. The Selken case interpreted the Iowa cancellation statute, Code § 515.81, prior to amendment in 1959. When that case was decided the Iowa statute provided, "The policy may be canceled by the insurance company by giving five days notice of such cancellation * * *." § 515.81, The Code, 1954. The events in the present case occurred after the 1959 amendment, under § 515.81 as it now reads:

"The policy may be canceled by the insurance company by service of notice in writing upon the insured which notice shall fix the date of cancellation which shall be not less than five days after service of such notice. Such service of notice may be made in person, or by mailing such notice to the insured at his post office address as given in or upon the policy, or to such other address notice of which the insured shall have given to the company in writing. A post office department receipt of certified or registered mailing shall be deemed proof of receipt of such notice."

■ Farmers does not contend the amendment had the effect of vitiating the rule of Selken requiring actual receipt of the cancellation notice for it to be effective. Instead Farmers uses Selken defensively to counter Merryweathers' attack at trial on its failure to send notice of cancellation by certified or registered mailing. Farmers correctly points out in its brief the amendment did not foreclose mailing notice by regular mail, saying:

"It merely enlarged the manner in which sufficient legal notice could be given and provided a method of proof

that notice was received. To hold otherwise ignores the law's policy of attempting to give the insured real notice of cancellation since in many instances regular mail more often accomplishes this objective."

Thus Farmers does not assert the amendment returned the rule to what it was in Sorensen v. Farmers Mut. Hail Ins. Assn., 226 Iowa 1316, 286 N.W. 494 (1939), which held notice complete upon mailing. Sorensen was overruled in Selken.

■ We find nothing in trial court's decision from which to infer it was based on the failure of Farmers to send notice of cancellation by certified or registered mail. Farmers acknowledges in its reply brief its argument rests on a mere assumption that it was so based. But we do not assume, without proof, that a trial court reached findings through application of erroneous rules of law. See Frantz v. Knights of Columbus, supra. And, although trial court's findings are unusually brief, we have held one who is dissatisfied with such findings should invoke rule 179(b), Rules of Civil Procedure, which permits a motion asking that they be amended or enlarged. Stanley v. State, 197 N.W.2d 599, 606 (Iowa 1972). Farmers did not ask for enlarged findings. No error of law has been demonstrated on this point.

Farmers also alleges the evidence establishes Merryweathers received cancellation notice within the meaning of Selken. Its evidence tended to show cancellation notice was mailed to Merryweathers' Provo address September 19, 1968, and was not returned; a postal department rule would have caused the mail to be returned to the sender in ten days if not deliverable; an earlier mailing of the policies to that address was so returned, and the later October 15, 1968, mailing of the $3.39 refund and confirmation of cancellation went to the Provo address and was admittedly received by Merryweathers in Illinois.

■ This contention assails the sufficiency of evidence to support trial court's finding Farmers did not sustain its burden to prove effective cancellation. There was substantial evidence from which the court could find Merryweathers had given Farmers' Moline agent timely notice of their change of address and that, in any event, they had made such arrangements for forwarding their mail they would have received the cancellation notice if it had been sent to the Provo address as claimed, and since they did not receive the notice, it must not have been mailed, or, if it was, the notice was not delivered to the Provo address. We do not know the precise basis of trial court's finding but again note Farmers did not ask for enlargement.

It was for trial court to decide what evidence was credible and what substantial evidence had greater probative force.

We do not overlook the body of law which mitigates the requirement of actual receipt of notice where an insured moves without telling his insurer his new address. See 43 Am.Jur.2d Insurance § 411 at 458–459; annot., 63 A.L.R.2d 570 et seq. We believe this case is like those where the trier of fact could find, and must have found, the insurer had actual knowledge of the changed address. See, e. g., Skipper v. Federal Insurance Company, 238 La. 779, 788, 116 So.2d 520, 523 (1959) ("The knowledge of the agent as to the correct address is binding on the company."). There is no basis in the record for believing trial court applied a different principle of law in reaching its findings in this case.

■ Farmers also urges the October 15, 1968, mailing which was received by Merryweathers was sufficient notice of cancellation. However, that document referred to the prior purported cancellation and was not a notice of impending cancellation under Code § 515.81. Cancellation could not be effected without compliance with the statute.

Farmers has not shown trial court's findings are without substantial support in

the evidence or were induced by application of erroneous rules of law. The case must be affirmed.

III. *The effect of mailing notice under Code § 515.81.* Farmers does not contend notice of cancellation is complete on mailing by regular mail under § 515.81 as amended in 1959 and must succeed or fail here on the assignments of error made and argued. Errors neither stated nor argued are waived. Claude v. Weaver Construction Company, 261 Iowa 1225, 1228, 158 N.W.2d 139, 142 (1968). However, we are not bound by Farmers' apparent concession the 1959 amendment did not repudiate the rule of Selken v. Northland Ins. Co., supra. We believe it is appropriate to address this question to dispel any impression that we may not agree with the interpretation given the statute by the parties in that respect.

Comparison of § 515.81 before and after the 1959 amendment shows three changes:

1. Before amendment cancellation was effected by "giving five days notice." After amendment cancellation is effected "by service of notice in writing upon the insured" five days prior to the cancellation date.

2. The amendment specifies the manner in which notice may be served. It is served in person or by mailing to the address furnished by the insured.

3. Regarding mailing the amendment adds "A post office department receipt of certified or registered mailing shall be deemed proof of receipt of such notice."

There is nothing in these changes to signify legislative disapproval of the Selken case. As previously noted, Selken requires the cancellation notice to be received to be effective. As observed there, "When the legislature states an insured shall have 'notice' it can only mean that *he shall know* about the fact of cancellation." 249 Iowa at 1053–1054, 90 N.W.2d at 33.

The right to notice of cancellation is a valuable right of the insured. Barry v. Milbank Mutual Insurance Company, 188 N.W.2d 326, 329 (Iowa 1971). Its purpose is to forewarn the insured so he may seek insurance elsewhere. Notice must be given in strict compliance with the statute. All ambiguities are resolved in favor of the insured. Selken v. Northland Ins. Co., supra; 45 C.J.S. Insurance § 450b, p. 86.

As amended § 515.81 still requires the giving of notice. The only changes are to specify it must be in writing and it may be delivered personally or through the mails. Rather than say mailing is conclusive proof of notice our legislature added language indicating its intention that the notice must be received to be effective. A postal receipt is not deemed proof of service; *it is deemed proof the notice was received.* Under the statute, in appropriate cases, other evidence such as the presumption as to receipt of a letter sent by ordinary mail to the addressee's home or work address may be invoked to help prove the notice was received. Selken v. Northland Ins. Co., supra, 249 Iowa 1050–1051, 90 N. W.2d at 31–32.

This is a case of first impression under Code § 515.81 in its present form. The statute's language is unique both among our other notice statutes and in comparison to cancellation statutes and policy provisions elsewhere. See annot., 64 A.L.R.2d 982, 993. Decisions from other jurisdictions holding that mailing is conclusive notice are distinguishable because the cancellation provisions differ from those in our statute. Many of them are based on interpretations of insurance policy language rather than statutes. In those cases the result has often been predicated on the fiction that the insured designates the postal department as his agent to receive notice when he enters the insurance contract. Since our provisions are statutory we do not have occasion to embrace that fiction nor are we justified in assuming the legis-

lature did so. We are also mindful that greater sensitivity to questions of due process is required when such a provision is imposed by statute than when contained in an insurance contract. See Smith v. Iowa Employment Security Commission, 212 N.W.2d 471 (Iowa 1973); Eves v. Iowa Employment Security Commission, 211 N.W. 324 (Iowa 1973). Where the provision is contractual it is arguably part of the bargain. 43 Am.Jur.2d Insurance § 409 at 456. See Westmoreland v. General Accident Fire & Life Assur. Corp., 144 Conn. 265, 129 A.2d 623 (1957), annot., 64 A.L.R.2d 982, 1000. But see Donarski v. Lardy, 251 Minn. 358, 88 N.W.2d 7 (1958), cited with approval in Selken v. Northland Ins. Co., supra. Due process is certainly better served when notice is received than when it is not.

These considerations lead us to believe the legislature intended by its 1959 amendment to Code § 515.81 to maintain the Selken rule that notice of cancellation must be received to be effective.

Affirmed.

MASON, RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ., concur.

MOORE, C. J., and UHLENHOPP and REES, JJ., dissent.

UHLENHOPP, Justice (dissenting).

The parties do not raise constitutional questions. They agreed that Utah law governs cancellation here, and so that question need not be pursued. They also agree that in the absence of evidence of what Utah law is—and no such evidence was introduced here—such law is presumed to be the same as Iowa statutory and common law. Zeman v. Canton State Bank, 211 N.W.2d 346 (Iowa). Rule 94 of the Rules of Civil Procedure by its terms does not reach the present situation.

Both the policy and the Iowa statute authorize a cancellation notice by ordinary mail. Farmers argues this and then asserts and cites authorities that a notice does not have to be received by the insured to be effective when the policy allows mailed notice. I think the question of whether Iowa law requires that the notice be actually received, notwithstanding such a policy provision, is thus squarely presented.

The trial court tried the action by ordinary proceedings, and its fact findings are verities as they are supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure. But the legal principles it applied are open to examination by us. The trial court held that Farmers did not comply with the law in attempting to cancel the Chevrolet policy and based its conclusion on Selken v. Northland Ins. Co., 249 Iowa 1046, 90 N.W.2d 29. That case held, under the statute formerly in effect, that a cancellation notice must be received by the insured to be effective.

The previous Iowa statute on cancellation of policies provided simply, "The policy may be canceled by the insurance company by giving five days notice of such cancellation. . . ." Code 1954, § 515.81. The statute in effect however when these events occurred, and now, provides:

The policy may be canceled by the insurance company by service of notice in writing upon the insured which notice shall fix the date of cancellation which shall be not less than five (5) days after service of such notice. Such service of notice may be made in person, or *by mailing such notice to the insured at his post-office address as given in or upon the policy*, or to such other address notice of which the insured shall have given to the company in writing. A post office department receipt of certified or registered mailing shall be deemed proof of receipt of such notice. Code 1973, § 515.81 (italics added).

The question, therefore, is this: does our present statute permitting the optional service of notice "by mailing such notice to

the insured at his post office address as given in or upon the policy" require receipt of the notice by the insured? Or is service accomplished by proper mailing of the notice? The law on service of notice both outside and within the insurance field may be considered—and both under a statute such as we formerly had, simply providing for notice, and under a statute such as we now have, authorizing service by mail.

The law is well settled outside the insurance field that when a statute simply provides for service of notice, personal service is contemplated. State v. Hansen, 244 Iowa 145, 55 N.W.2d 923.

The law outside the insurance field is equally well settled that when a statute provides for service of notice by mail, service is accomplished by mailing, and receiving by the addressee is not required—similar to the case of service by publication. The leading case is Hurley v. Olcott, 198 N.Y. 132, 134–135, 91 N.E. 270 ("In many cases the statute provides that notice may be served by mail. Such is the provision as to service of papers on the attorneys in an action, and it has been uniformly held that the service was effective when the papers were properly mailed, regardless of their receipt by the adverse party."). The rule has been applied in various situations. E. g., Ford v. Genereux, 104 Colo. 17, 87 P.2d 749 (notice of issuance of tax deed); Wasden v. Foell, 63 Idaho 83, 117 P.2d 465 (same); Benson v. Benson, 291 S.W.2d 27 (Ky.) (notice of modification of decree); Weinstein v. All State Credit Corp., 34 A.D.2d 971, 312 N.Y.S.2d 582 (notice of redemption); McCoy v. Bureau of Unemployment Compensation, 81 Ohio App. 158, 77 N.E.2d 76 (notice of denial of claim); Commonwealth v. Coldren, 140 Pa.Super. 321, 14 A.2d 340 (notice of hearing to revoke license). Where notice by mail is authorized, service is proved by showing that the notice, properly addressed, with postage prepaid, was deposited in the mail. Johnson v. Barreiro, 59 Cal.App.2d 213, 138 P.2d 746; Hartford

Trust Co. v. West Hartford, 84 Conn. 646, 81 A. 244. See Reserve Ins. Co. v. Johnson, 260 Iowa 740, 150 N.W.2d 632. A statute may also require, of course, that a mailed notice be actually received. Code 1973, § 321.505 (return receipt required)— see Emery Transp. Co. v. Baker, 254 Iowa 744, 119 N.W.2d 272; Gooden v. Camden Fire Ins. Assn., 11 Mich.App. 695, 697 n. 1, 162 N.W.2d 147, 148 n. 1 (provision that mailing only "prima facie" proof of "notice"); Schroedel Corp. v. State Highway Comm'n, 38 Wis.2d 424, 429, 157 N.W.2d 562, 565 ("Where service by mail is authorized, *and in the absence of specific language to the contrary* such service of notice is completed upon the timely mailing even though not specifically stated."—italics added).

Turning to the insurance field, the decisions follow the same principles. When the insurer's right to cancel is authorized simply by giving notice, as under our previous statute, actual notice to the insured is necessary. The cases are gathered in Annotation, 64 A.L.R.2d 982, 994–995. This was the rule applied in the case relied on by the trial court—Selken v. Northland Ins. Co., 249 Iowa 1046, 90 N.W.2d 29— which was decided under the previous statute providing simply that "The policy may be canceled by the insurance company by giving five days notice of such cancellation. . . ." Code 1954, § 515.81. (Selken overruled Sorensen v. Farmers Mut. Hail Ins. Assn., 226 Iowa 1316, 286 N.W. 494. Sorensen had held to the contrary 19 years earlier and was out of line with the rule followed elsewhere when a statute simply provides for giving notice—although the legislature let the Sorensen rule stand during those 19 years.)

On the other hand, when the insurer's right to cancel is authorized "by mailing of notice to the insured's address, or contains substantially similar language, the unanimous rule is that the actual receipt by the insured of such notice is not a condition precedent to a cancellation of the policy by the insurer, and the mere mailing of the

letter containing a notice of cancellation is sufficient to effect a cancellation." Annot. 64 A.L.R.2d 982, 995. The cases fully support this statement. See e. g. Riddick v. State Capital Ins. Co., 271 F.2d 641 (4 Cir.); Anderson v. Preferred Risk Mut. Ins. Co., 107 Ga.App. 293, 129 S.E.2d 816; Dent v. Monarch Life Ins. Co., 231 Mo. App. 283, 98 S.W.2d 123; Mackiw v. Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co., 201 Pa.Super. 626, 193 A.2d 745; Moore v. Palmetto Bank & Textile Ins. Co., 238 S.C. 341, 120 S.E.2d 231; California-Western States Life Ins. Co. v. Williams, 120 S.W.2d 844 (Tex.Civ. App.); Wolonter v. United States Cas. Co., 126 Va. 156, 101 S.E. 58; Mueller v. American Indemnity Co., 19 Wis.2d 349, 120 N.W.2d 89. The Iowa decisions are in accord. Ross v. Hawkeye Ins. Co., 83 Iowa 586, 50 N.W. 47, sec. app. 93 Iowa 222, 61 N.W. 852; Holbrook v. Mill Owners Mut. Ins. Co., 86 Iowa 255, 53 N.W. 229. Ross involved a statute that policies could not be canceled for nonpayment of premium except by serving a 30-day notice upon the insured. The statute provided, "Such notice may be served either personally or by registered letter addressed to the insured, at his post office address, named in or on the policy. . . ." 18 G.A. ch. 210, § 2, McClain Code 1880, at 299. This court held in Ross that service was accomplished on proper mailing, which was the registration of the letter, rather than by receiving by the insured, saying, "The statute, as we understand, specifies the acts that constitute the service, and it is the service, and not notice, that gives rise to the operation of the statute. The service may be 'by registered letter *addressed to the assured* at his *post-office address named in or on* the policy.' The italicized words are adverbial, and fix the manner of the service." 83 Iowa at 589, 50 N.W. at 47. That view was reaffirmed on second appeal, 93 Iowa 222, 61 N.W. 852, and was followed in Holbrook v. Mill Owners Mut. Ins. Co., supra.

Now what does present § 515.81 of the Code authorize? It provides for "service of notice" and gives an insurer the option of service in person or. "by mailing such notice to the insured at his post office address as given in or upon the policy, or to such other address notice of which the insured shall have given to the company in writing." Under the rule both outside and within the insurance field that a statutorily authorized service by mail is complete upon mailing, this statute makes service complete on mailing and not upon receipt by the addressee.

The Iowa statute does not require certified or registered mail as it did at the time of the Ross case, but it does give insurers a convenient means of proving service—the post-office receipt for certified or registered mail. If a mailed notice is not certified or registered, mailing must be proved in another way. But even in the case of certified or registered mail the statute does not require that the insured actually receive the notice. The postal receipt specified in the statute is the receipt from the *post-office department* for certified or registered mail, not a return receipt from *the addressee*. The legislature knows how to draft a statute requiring that the addressee actually receive mailed notice. Code 1973, § 321.505 (return receipt).

The history of this legislation reinforces the conclusion that service is complete on mailing under the statute in its present form. Under the former statute authorizing cancellation simply on notice to the insured, this court originally held that receipt of the notice by the insured was not required. Sorensen v. Farmers Mut. Hail Ins. Assn., 226 Iowa 1316, 286 N.W. 494. That decision was contrary to cases elsewhere but it did lay down a rule that notice is complete on mailing, *and the legislature evidenced no discontent with that rule*. Nineteen years later this court overruled Sorensen and held, in accordance with the general rule elsewhere, that the statutory words "by giving five days notice of such cancellation" require receipt of the notice by the insured. At its next session the following year, the legislature repealed the

words "by giving five days notice of such cancellation" and authorized service of notice in person or by mailing—the statute in its present form. The legislature did not need this new enactment if it intended thereby that the insured must receive mailed notice to make it effective, for that was already the holding of Selken. See Cedar Rapids Steel Transportation, Inc. (Amana Refrigeration Co.) v. Iowa State Commerce Comm., 160 N.W.2d 825, 831–832 (Iowa) (" 'Usually when an amendment is adopted, it is presumed the legislature intended to make a change in the existing law' ".). Instead of providing that mailed notice had to be received, the legislature substituted new language which, in the case of mailed notice, the courts hold permits completed service by the act of proper mailing—"service of notice may be made in person, or by mailing to the insured at his post-office address"—language, indeed, close to that which this court itself has held renders proper mailing to be completed service. Ross v. Hawkeye Ins. Co., 83 Iowa 586, 588, 50 N.W. 47 ("notice may be served, either personally or by registered letter, addressed to the assured at his post-office address"). Under our present statute, mailed notice is complete upon mailing in accordance with the statute.

Here Farmers introduced substantial evidence it mailed the notice, generating a fact question on mailing. The notice is sufficient in content and, if mailed, was mailed in time and to the proper address. But was the notice in fact mailed?

The problem here is that the trial court did not find the fact as to whether Farmers did, or did not, mail the notice. The appeal is not heard de novo, and the case should, therefore, be returned to the trial court for a finding of fact on that specific issue, based on the evidence introduced at the original trial. Collins v. Parsons College, 203 N.W.2d 594 (Iowa); Busker v. Sokolowski, 203 N.W.2d 301 (Iowa).

MOORE, C. J., and REES, J., join in this dissent.