## Nationwide Insurance Company v. Hyrniszak

*Joseph H. Dougherty,* for plaintiff.

*Ronald H. Elgart,* for defendant Nicholas Hyrniszak.

*Barbara N. Lyons,* for defendant State Farm Insurance Company.

RUFE, *J.,* June 25, 1985—Defendant, Nicholas Hyrniszak, seeks indemnification from his insurance carrier, State Farm Mutual Automobile Insurance Company (hereafter State Farm) for payment of the subrogation claims of Nationwide Insurance Company. Nationwide, as subrogee for Charles Hurst, is seeking reimbursement for payments made to its insured for damages incurred in an auto-

mobile accident of October 15, 1980. The question confronting the court is whether defendant Hyrniszak was insured by defendant State Farm at the time of the accident. A non-jury trial was conducted by the undersigned on March 4, 1985. In accordance therewith, we find the facts to be as recited below.

Defendant and his wife, Vera Hyrniszak, initially obtained insurance with State Farm through William Woodhouse, an independent agent. The assigned risk policy (no. A84-3844-C12-38A) became effective on September 12, 1979 at 9:00 a.m. This plan was intended to cover the couple's three vehicles, including the 1965 Plymouth Belvedere which Mr. Hyrniszak was driving on the day of the accident. Under the terms of the policy, it was to remain in effect for one year.

In November 1979, Mr. Hyrniszak requested that one of the cars, the 1972 Pontiac, be removed from the policy. State Farm complied with this request and issued a new declarations page with an effective date of November 8, 1979. Also, new Pennsylvania No-fault identification cards were issued for the remaining vehicles bearing the effective date of November 8, 1979, and reciting "not valid more than one year from effective date."

On August 6, 1980, Mrs. Hyrniszak requested that a 1972 Pontiac be added to the policy as a covered vehicle. Such addition was made and State Farm issued a general endorsement verifying the Pontiac as a covered vehicle dated August 7, 1980. The Hyrniszaks paid State Farm an additional $6.38 for this coverage.

Defendant State Farm asserts that on July 12, 1980, they mailed a "take-out" or renewal notice to the Hyrniszaks advising them that they could be taken out of assigned risk and placed in the regular

insurance market. This notice clearly notes the policy renewal date and proposed premium, and advises the recipient that no other notices will be provided. Both the Hyrniszaks and Mr. Woodhouse testified that they never received such a take-out letter, or any statement for future billing. According to State Farm, the Hyrniszaks' policy automatically terminated for non-payment of premium on September 12, 1980.

Mr. Hyrniszak was involved in an automobile accident on October 15, 1980, and notified the carrier on October 16, 1980. On October 21, 1980, Mrs. Hyrniszak forwarded a check for $58.28 to State Farm at the suggestion of Mr. Woodhouse to clear-up what he called "a misunderstanding" on State Farm's behalf. This check was returned to Mrs. Hyrniszak advising her that the policy had been terminated. This was the first notice that the Hyrniszaks received that their policy was terminated. Mr. Woodhouse also testified that he was not advised of the termination until after Mr. Hyrniszak's accident.

At this juncture it should be noted that the parties agree that all premiums had been paid through the disputed termination date of September 12, 1980, and that the Hyrniszaks had no accidents during that time. All parties stipulate that the damages involved in this case are $12,993.92.

The insurance agreement held by Hyrniszaks provides the following conditions for termination (Part F, page 12):

"A. *Cancellation.* The policy may be cancelled during the policy period as follows:

• • •

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy.

(a) at least 10 days notice

(1) if cancellation is for non-payment of premium; . . . .

C. *Automatic Termination.* If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer."

Defendant State Farm maintains that the existence of its renewal or "take-out" letter meets the notice requirement established by Section C for automatic termination and thus State Farm is not liable to the Hyrniszaks for indemnification. We cannot agree.

Termination of an insurance policy requires that notice be provided to the insured in accordance with 40 P.S. §1008.5. While insurers issuing assigned risk plans are not subject to the same 15 day requirement as regular insurers are (§1008.5), they are bound to comply with whatever notice provisions are designated by their policies. Royal Indemnity Company v. Adams, 309 Pa. Super. 233, 455 A.2d 135 (1983). The court in Royal further stated that "under the well established law of Pennsylvania, when notice of cancellation is required by statute or the policy, an insurer's failure to follow such requirements results in the continuation of coverage. Paul v. Dwyer, 410 Pa. 229, 188 A.2d 753 (1963) . . . ." Royal, supra, 246, 142.

In this case the factual issue to be resolved is whether the alleged "take-out" notice was ever mailed. Defendant State Farm says that such a letter was generated on July 12, 1980, and addressed to Vera Hyrniszak. Mr. James F. Barry, an underwriting specialist for State Farm, said that the take-

out letter was in the department file, but that he personally did not mail the letter, and he has no knowledge of whether or not it was actually mailed. No other witness or evidence of actual mailing of the letter was offered. We do not find this sufficient evidence to warrant the application of the presumption of due receipt, particularly in light of the credible testimony of Mrs. Hyrniszak and Mr. Woodhouse that no such letter was ever received.

The burden of proof of proper mailing is on the company alleging cancellation. Mackiw v. Pa. Threshermen and Farmers' Mutual Casualty, 201 Pa. Super. 626, 193 A.2d 745 (1963). Generally, such proof includes testimony by a clerk that the notice was duly prepared and deposited with the post office in accordance with normal office procedures. Varecchia v. DeSiato, Pa. 353 Pa. 292, 45 A.2d 8 (1946). State Farm did not meet its burden of proof in establishing proper mailing. Thus, we conclude no offer to renew was communicated to the Hyrniszaks. Since the automatic termination provision was not triggered, the policy was effectively continued. If State Farm then chose to terminate for failure of premium payment, they had to proceed under A.2.(a) and provide ten days notice of cancellation. This admittedly was not done, and the policy was not effectively cancelled on the date of the accident, October 15, 1980. Thus, State Farm is liable for indemnification.

In addition to Hyrniszaks' request for indemnification, there is also a request for payment of attorney's fees and costs. We are referred to the case of Kelmo Enterprises, Inc. v. Commercial Insurance, 285 Pa. Super. 13, 426 A.2d 680 (1981), finding that where an insurer unreasonably and in bad faith refuses to defend an insured, attorney's fees may properly be awarded. Kelmo, however, concerns a

dispute over types of coverage under an effective insurance policy. The No-fault Act provides for attorney's fees at 40 P.S. §1009.107(3) as follows:

"(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof withour reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended." [July 19, 1974, P.L. 489, Art. I, §107, effective in 12 mos.]

In reviewing the actions of State Farm herein, it is not certain that the refusal to defend was made in bad faith. State Farm checked its records which contained the "take-out" letter, assumed that the letter had been mailed in due course and, in accordance with policy provisions, considered the policy terminated under the automatic termination provision as of September 12, 1980. While we do not condone State Farm's actions concerning the alleged renewal letter herein, we do not find that their refusal to defend was unreasonable in light of the contents of their file.

Accordingly, we enter the following

## ORDER

And now, this June 25, 1985, judgment is entered in favor of defendant, Nicholas Hyrniszak, and against the additional defendant, State Farm Insurance Company, on plaintiff's in the amount of $12,993.92.