(24 Misc. Rep. 136.)

### IKELLER v. HARTFORD FIRE INS. CO. et al.

(Supreme Court, Special Term, Wyoming County. June, 1898.)

1. INSURANCE—AUTHORITY OF BROKERS.

An insurance broker was employed to procure insurance from the authorized agents of an insurance company, and under such employment obtained a policy, but with notice that the same was subject to the approval of the insurance company. He retained the policy, and later, when directed to return the policy, as the company had declined the risk, he obeyed. Held, that the broker was the agent of the owner, and his act in returning the policy without insisting on five days' notice of cancellation was within his power.

2. SAME—CANCELLATION OF POLICY.

The mailing of an insurance policy with the obvious purpose of its cancellation, and the receipt thereof by the agent of the insurance company, constitute a cancellation.

3. SAME—DELIVERY OF POLICY.

There can be no recovery on a policy of insurance issued by an insurance company, but not delivered to the assured.

Action by Frank Ikeller against the Hartford Fire Insurance Company.    Complaint dismissed.

Bartlett, Van Gorder, White & Holt, for plaintiff.

Hubbell & McGuire, for defendant insurance company.

SPRING, J.    The plaintiff for several years had insured his property through Ingham & Farman, local insurance agents, located at Hume, Allegany county.    As the plaintiff was aware, his property, for some reasons not appearing, was regarded as an undesirable risk, and difficulties had arisen in effecting insurance upon it.    The agents had been unable to procure insurance in companies represented by them, and the policies had been placed by other local agents at their instance.    These facts were known to the plaintiff.    These agents represented the defendant within a prescribed territory, but the property of the plaintiff was not within the district assigned to them by the defendant.    Before the expiration of his policy in 1897, the plaintiff directed these agents at Hume to attend to continuing the insurance for him.    They wrote to Mr. McConnell, of Warsaw, who was the agent of the defendant, and held its signed policies, and was authorized to issue them without application or notice to the company.    The policy in question was issued by McConnell, and mailed to Ingham & Farman, September 23, 1897; and in the letter accompanying the same he states, "In case the Hartford should decline, will write in another company, but think they will carry the risk."    The policy contained a clause permitting the company to cancel it on five days' notice at its election.    It was received by Ingham & Farman, and retained by them, as was usual, to ascertain if the

risk was ultimately accepted by the company, until they received a letter from Mr. McConnell, under date of September 29, 1897, advising them that the defendant declined to accept the risk, and that it already had been offered to it by two other agencies; and the letter further contains an offer to procure insurance elsewhere, and asked for the return of the policy. In response to this letter, Ingham & Farman returned the policy to McConnell, October 2d, and informed him of companies which they had already applied to for the insurance, indicating that he was to endeavor to place the insurance with some other company. McConnell received this policy early in the evening of the 2d, and returned it to the defendant on Monday following. The barn of the plaintiff, which was covered by this policy, was burned early in the morning of the 3d, or about midnight of the 2d.

Ingham & Farman were not the agents of the defendant. They were brokers writing to authorized agents to procure a policy for plaintiff, and were not assuming in any way to represent the defendant. The plaintiff says he did not know where the insurance was to be obtained; that he left it to Ingham & Farman to manage. They represented him, therefore, in the transaction; and the defendant had protected itself against intrusions of this kind by the clause usual in policies, making the brokers procuring the insurance agents of the insured. The authority of Ingham & Farman from the plaintiff was a general one, with the aim to procure insurance for the plaintiff; and this carried with it the right to return or cancel policies, or whatever was essential to make effectual the primary purpose of their authority, which was the placing of adequate insurance. Standard Oil Co. v. Triumph Ins. Co., 64 N. Y. 85; Stone v. Insurance Co., 105 N. Y. 543, 12 N. E. 45; Karelsen v. Fire Office, 122 N. Y. 545, 25 N. E. 921. In this view of the case, Ingham & Farman were acting for the plaintiff when they received the policy from McConnell. They knew the defendant might decline to accept the risk, and retained the policy, awaiting the issue of the negotiations. They could have insisted upon the five days' notice before cancellation, but the unrestricted authority they possessed permitted them to waive this. They were seeking permanent insurance for their customer, not a policy terminable even before its delivery to him. Hermann v. Insurance Co., 100 N. Y. 411, 3 N. E. 341, relied upon by the plaintiff's counsel, is not in point. In that case the brokers had delivered the policy to the insured, and there was a complete ending of their agency. Had this transaction been terminated by the delivery of the policy to the plaintiff, then he alone would have possessed the power to return or to permit the cancellation of the policy. Their authority continued until they had placed the insurance for plaintiff. Whatever was necessary to bring about that result was within the compass of their power.

The mailing of this policy with the obvious purpose of its cancellation, and its receipt by the agent of the defendant, constituted its cancellation. Crown Point Iron Co. v. Ætna Ins. Co., 127 N. Y. 608, 28 N. E. 653; Train v. Insurance Co., 62 N. Y. 598.

Counsel for the plaintiff insists Ingham & Farman were agents for the defendant. While the evidence does not warrant such a finding,

yet, if such were the facts, it would not enable the plaintiff to succeed. If they were unqualifiedly the agents of the defendant, there was no delivery of the policy to the plaintiff at all. The agents would then be the custodians of the policy, holding it until definite action should be taken by the defendant; and no period of time would be required for its cancellation or extinction, for life would not be imparted to it until it reached the plaintiff. The defendant is entitled to judgment, dismissing the complaint, with costs.

Complaint dismissed, with costs.