ROSE INN CORPORATION, Plaintiff, *v.* NATIONAL UNION FIRE
INSURANCE COMPANY and Others, Defendants.

Supreme Court, Saratoga County, January 10, 1929.

*Butler, Kilmer, Hoey & Butler* [*Charles L. Hoey* of counsel], for the plaintiff.

*Ainsworth, Sullivan & Archibald* [*Charles B. Sullivan* of counsel], for the defendants National Union Fire Insurance Company, London Assurance Corporation and Niagara Fire Insurance Company.

*Richards & Affeld* [*George Richards* and *Frank Sowers* of counsel], for the defendants Importers and Exporters Insurance Company and American Eagle Fire Insurance Company.

HEFFERNAN, J. On March 5, 1928, plaintiff, the owner of a hotel, and the furnishings therein, located in Saratoga Springs, sustained loss by fire on its property in the sum of $63,144. It has brought this action to recover the proportionate share of the loss represented by policies issued by the defendants. There is no seriously disputed question of fact and the only proposition of law to be determined is which of two sets of policies was in force at the time of the fire.

The plaintiff is controlled by Moses and Louis Rosen, father and son, respectively. In the year 1925 it acquired the property described in the policies in suit. At that time a portion of the insurance on this property was carried by companies for which the Van Voast & Leonard Agency, Inc., was the commissioned agent. This agency also represented other companies. It was intrusted by its principals with necessary blanks, with authority to complete the same and to countersign, issue and deliver policies to persons desiring insurance. Exclusive of the policies in suit, plaintiff had other insurance on its property aggregating $90,907.32, which had been written by other agents. After acquiring the property in question, plaintiff instructed the Van Voast & Leonard Agency, Inc., to keep the premises insured in the same sum which had been previously carried in that agency. Plaintiff left it entirely to the agency to select the companies in which the risk should be carried. In many instances between 1925 and 1928 there had been policy substitutions brought about by request or direction of the then insurance companies to cancel or reduce their policies upon the risk. In those instances, upon receiving such request or direction from the insuring company, the agency selected from

its list of companies another prospective insurer, wrote a new policy which it issued as a substitute for the policy in plaintiff's possession, entered the transaction upon its records and its open account with plaintiff, and then consummated the proposed substitution and exchange of insurers by physically delivering the new policy to plaintiff upon the physical surrender by the latter of the policy which the particular company had ordered canceled.

On December 4, 1927, the agency executed and delivered to plaintiff a policy of the defendant Importers and Exporters Insurance Company, being one of the policies in suit, insuring plaintiff's building in the sum of $6,000 for a term of one year. By indorsement dated February 16, 1928, this policy was transferred to cover contents. On February 6, 1928, the agency similarly executed and delivered a policy of the defendant American Eagle Fire Insurance Company, being also one of the policies in suit, insuring the building in the sum of $2,000 for a term of one year. For convenience and clarity these two defendants will be referred to as the old companies, and the other defendants as the new companies.

About February 28, 1928, the defendant American Eagle Insurance Company directed its agent to cancel its policy. The agent, thereupon, selected a policy in the same amount in the defendant London Assurance Corporation, to replace the one directed to be canceled. It attempted to deliver this policy to plaintiff but was unable to do so because its officers were absent. It then transmitted to plaintiff by registered mail a cancellation notice of the policy. This notice was not delivered and was returned to the agency on February 29, 1928. No other notice of cancellation was given or attempted to be given on this policy.

On March 3, 1928, the defendant Importers and Exporters Insurance Company directed the agent to reduce its policy of $6,000 to a policy in the sum of $2,000. Anticipating effecting a substitution of policies of other companies which it represented, the agency, on the same day, wrote three policies covering the plaintiff's furniture, each in the sum of $2,000, one in the defendant Importers and Exporters Insurance Company, and the other two in the defendants Niagara Fire Insurance Company and National Union Company. The agency attempted to make an exchange of policies with plaintiff but was unable to do so because its officers could not be located and consequently the policies were returned to the agency where they remained until after the fire. The policies in the new companies covered the same property and protected against the same hazard as the old.

The premium on the policy of the defendant American Eagle Company was charged by the agency to plaintiff's account on the

day it became effective. The amount was never actually paid to the agency because when the cancellation was ordered on February twenty-eighth, the agency credited plaintiff's account with the full amount. The premiums for the new policies were, at the date of their writing, charged to plaintiff's account and at the same time the account was credited with the unearned premiums on the policies attempted to be canceled. No statement of this account was rendered to plaintiff until after the date of the fire. There is no question involved here, however, as to the payment of premiums.

On the night of March 5, 1928, the real property was damaged by fire to the extent of $43,394, and the contents of the building to the extent of $19,750. When the fire occurred, plaintiff had in its possession the policies of the old companies. Plaintiff's officers returned to Saratoga Springs the day after the fire. On that day, Mr. Eddy, of the Van Voast & Leonard Agency, Inc., informed them that the old companies had requested cancellations of their policies and that the agency had written policies in the new companies in anticipation of the cancellation and substitution. Eddy asked for the policies and was advised that they were in the safe in the fire ruins and no exchange was then made. A day later, however, these policies were recovered from the safe and plaintiff, upon the advice of its adjusters, surrendered them to the agency and received in exchange the policies in the new companies. After receiving the old policies the agency returned them to the respective companies and plaintiff has never regained possession thereof. The substituted policies remained in plaintiff's possession and were produced by it on the trial. The evidence also discloses, in great detail, the transactions between the Van Voast & Leonard Agency, Inc., with its principals regarding the issuance of the policies, the book entries, the daily and monthly reports and the remittances.

The plaintiff is not inequitably attempting to hold both the old and the new companies, but after the loss, being doubtful of its rights, it gave notice to all the companies, filed proofs of loss with all, which were rejected, not for any defect in form but on the ground that each company claimed that it was not liable under its policy. The defendant Importers and Exporters, however, acknowledged liability under its $2,000 policy. The old companies contend that their policies were canceled and were not in existence as contracts of insurance at the time of the fire. The new companies contend that their policies of insurance never came into existence as valid contracts. Therefore, the question to be answered is whether the policies of the old companies which plaintiff had

in its possession at the time of the fire had been effectively canceled prior thereto, and whether the policies in the new companies which had been written by the agent in anticipation of such cancellation had legal inception in place thereof.

The following provision from the New York Standard Insurance policy is the sole method of cancellation by the company: " This policy shall be cancelled at any time at the request of the insured, in which case the Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by the Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The method of cancellation prescribed in the policy must be strictly followed. The insured must have actual notice of cancellation, or such a situation must be brought about as to put him on inquiry which, if made, would result in actual notice. A mere entry on the company's books, or a mere instruction to its agent to cancel does not operate as a cancellation. There was no compliance by the old companies with the provision of the policy requiring five days' notice of cancellation to be given and until the giving of such a notice these policies were not by their terms cancelable by these defendants. (*Yoshimi* v. *Fidelity Fire Ins. Co.*, 99 App. Div. 69; *Partridge* v. *Milwaukee Mechanics' Ins. Co.*, 13 id. 519; *Stone* v. *Franklin Fire Ins. Co.*, 105 N. Y. 543; *Hermann* v. *Niagara Fire Ins. Co.*, 100 id. 411; *Ikeller* v. *Hartford Fire Ins. Co.*, 24 Misc. 136.) The attempted service of the written notice of cancellation by registered mail did not effect such cancellation. (*Kamille* v. *Home Fire & Marine Ins. Co. of California*, 129 Misc. 536.) The fact that the companies' agent marked these policies canceled upon its records and credited the premiums on its books was ineffective, in the absence of the notice prescribed in the policy, to cause the cancellation. The controversy between the old companies and their agent regarding the monthly remittances cannot affect plaintiff's contracts. If the old policies were not canceled before the fire but were actually in force, it seems to me that their subsequent surrender to the defendants could not extinguish plaintiff's cause of action to recover for the loss. (*Stone* v. *Franklin Fire Ins. Co.*, *supra*.)

These defendants argue that plaintiff, by reason of the surrender, waived notice of cancellation. A waiver of the requisite notice

will not be presumed from a mere surrender of the policy in the absence of anything to show an intention to surrender for immediate cancellation, or from a surrender of the policy in ignorance of its provisions as to notice and in reliance on the agent's statement that the cancellation was effective immediately. Neither is a waiver shown by plaintiff's acceptance of the substituted policies and the surrender of the old after the loss occurred. After the loss the rights of the parties became fixed and the policies could not then be canceled. The contract then, so far as the insurer is concerned, was changed from a contingent to a fixed liability.

The learned counsel for the old companies, in a very persuasive argument, assert that plaintiff, by its course of dealing with the Van Voast & Leonard Agency, Inc., vested that agency with authority to accept notice of cancellation of the old policies and to substitute the new policies therefor, and that plaintiff's subsequent surrender of the old policies and its acceptance of the substitutions constitute a ratification of the acts of the agent. The conduct of the Van Voast & Leonard Agency, Inc., before the fire clearly indicates that it did not understand that it had any authorization to act as plaintiff's broker and bind plaintiff by its decisions to cancel policies in plaintiff's possession. The agency sought to effect an exchange of the policies of the old companies before the fire. It failed to do so because Rosen and his son were absent. Then it sought to cancel on the companies' behalf by mailing plaintiff a notice of cancellation. If this agency had authority from plaintiff to accept cancellation then all this was unnecessary. The evidence shows that this agency never assumed to cancel any policies of plaintiff, except to note the cancellation and substitution provisionally upon its records in anticipation of effecting an actual surrender and substitution later. Without discussing in detail the cases in our own jurisdiction, cited and relied on by defendants, it suffices to say that they are all distinguishable from the case at bar. Many of them were based upon the earlier form of fire insurance policy which contained wholly dissimilar provisions as to the method and manner of cancellation, and are, therefore, inapplicable. The determining point in others was whether the insurance was procured through an agent or a broker. There is a very important distinction between an insurance agent and an insurance broker. (*Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608.) Ordinarily, an insurance agent represents the company, whereas a broker represents the insured. The agent, during his employment, is clothed with certain powers and assumes certain responsibilities; he owes allegiance to the company employing him. A broker owes no

duty or allegiance to any particular company. An insurance agent has no right to cancel a policy without the insured's authority or consent. He is the agent only of the company by which he is employed in the solicitation of the risk, the making of the application and the execution and delivery of the policy. He cannot be considered in any sense as the agent of the insured in any matter connected with the issuance of the policy. (*Crown Point Iron Co.* v. *Ætna Ins. Co., supra.*) It is elementary that the same person cannot act in a dual capacity without the consent of both parties. It is common knowledge that a person applying for insurance does not nominate the company or companies. This is usually left to the insurance agent and the mere fact that the agent selects the companies cannot make him the agent of the insured. If an insurance agent is employed by an insured to .procure specific insurance, his authority terminates with the procurement of the policy and he has no implied authority to receive notice of cancellation thereof so as to bind the insured, and this although there may be a general custom in the insurance business authorizing an insurance company to give such notice to the agent through whom the insurance was procured. Notice to the company's agent is not notice to the insured unless he is also the latter's agent.

This effectually disposes of the proposition that the Van Voast & Leonard Agency, Inc., was acting as plaintiff's agent. Counsel for the old companies rely on *Hamm Realty Company* v. *New Hampshire Fire Ins. Co.* (80 Minn. 139; 84 id. 336); *Hollywood Lumber & Coal Co.* v. *Dubuque Fire & Marine Ins. Co.* (80 W. Va. 604); *Alliance Insurance Company* v. *Continental Gin Co.* (274 S. W. [Tex. Civ. App.] 299); *Larsen* v. *Thuringia American Insurance Co.* (208 Ill. 166) in support of their position. These cases were all decided upon the principle that the insurance agency had authority, by reason of custom and usage, to accept, on behalf of the insured, notice of cancellation of policies and to substitute other policies therefor. The Van Voast & Leonard Agency, Inc., had no such authority from plaintiff. In so far as it may be urged that these authorities are at variance with the views here expressed, the answer is that in this respect they are in conflict with adjudications in our own forum. An insurance agent who has been merely directed by an insured to keep his property insured in a fixed amount has no authority to discharge the contract of insurance which is validly in effect. To hold otherwise would open the way to a " sea of troubles," one result of which would be to leave an insured entirely at the mercy of the agent for his insurer. It would be against sound public policy to hold that an agent, merely

by reason of a practice sanctioned among insurance carriers, has authority from the insured to discharge existing contracts of insurance without notice to or knowledge of the insured. Upon direction from an insurer he might discharge a policy of a solvent company and replace it in an insolvent one. In many conceivable situations, if deemed to have authority to bind the insured by discharging existing contracts of insurance, acting as the agent of the insuring company and under its direction, he might so act as to cause irreparable loss to the insured. If this litigation had arisen out of the cancellation of the old policies by the agency without notice and without any substitution of others, can there be any doubt that plaintiff upon discovering this situation after the loss could recover? If the agency had authority to cancel and make substitution, then by the same token it had authority to cancel without making replacement. Such a proposition is without support in either logic or justice. It is not in accord with either principle or reason that one person should be at the same time the agent for both parties having opposing interests. Sound public policy requires that the authority of ordinary insurance agents should be strictly limited.

For these reasons the plaintiff is entitled to judgment against the old companies for the amounts stipulated, with interest and costs, and the complaint as to the new companies is dismissed, but, under the circumstances, without costs to them.