389 A.2d 1139

Patrick CAMPBELL, Morris Yelen and Mary P.
Yelen, a/t/i/m/a, Appellants,

v.

ROYAL INDEMNITY COMPANY OF NEW YORK.

Superior Court of Pennsylvania.

Argued June 16, 1977.

Decided July 12, 1978.

Barry A. Yelen, Wilkes-Barre, for appellants.

Robert E. Marsh, Jr., Wilkes-Barre, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This appeal arises from a jury verdict for the defendant in an assumpsit action in the Common Pleas Court of Luzerne County. Appellant's motions for new trial and judgment n.o.v. were denied. We affirm the decision of the lower court.

Appellant Patrick Campbell owned a wooden frame residential building in Wilkes-Barre, Pennsylvania. The building was unoccupied for the purpose of converting it from a three apartment to a six apartment dwelling. Pursuant to an oral contract, appellant Morris Yelen, a licensed general building contractor, was making, or preparing to make the necessary alterations in the building. Yelen testified that Campbell owed him a sum of money for work done on the premises, although at trial evidence was adduced that no

signs of physical changes on the building by Yelen were evident. When the money was not forthcoming, Yelen took out a fire insurance policy on the building with Royal Indemnity, in March, 1965.

In June, 1965, a fire occurred at the insured premises and suit was brought in 1974 to recover the insurance proceeds from the appellee company.[1] At trial, the insurance company argued that the policy was not enforceable at the time of the fire due to the fact that an effective cancellation[2] had been mailed to appellants prior to the fire, and that Yelen had no insurable interest under the policy. The jury found for the insurance company.

We will discuss two of the major issues presented on appeal:[3] first, whether the trial court erred in charging the jury that any defense the insurance company had against the owner of the building, Campbell, was also good against the contractor, Yelen,[4] and second, whether the insurance company's proof of notice of cancellation was properly admitted as an exception to the hearsay rule.

## I.

In deciding the first issue, we must look to the underlying question of whether or not the contractor, Yelen, had an insurable interest in the property involved. In an action on a fire insurance policy, the question whether a person had an insurable interest is one of fact for the jury to decide. *Shindler v. Ins. Co. of North America*, 121 Pa.Super. 483, 184 A. 262 (1936). Since the jury found against Yelen, it either found that Yelen had no insurable interest, in which

1. No issue of the statute of limitations was raised.

2. The underlying reasons for cancellation were not argued at trial.

3. Appellants' brief raises three general issues but divides their argument into eleven issues. We feel our selection and discussion of the two major issues is dispositive, and find the remaining issues to be without merit.

4. Since appellant's brief does not argue any interest concerning Yelen's wife, Mary P. Yelen, in this appeal, our discussion will be limited to appellants Patrick Campbell and Morris Yelen.

event his recovery under the policy was impossible and any error in that portion of the charge objected to, supra, would be harmless, or in the alternative, the jury found the contractor had an insurable interest which was invalidated by an effective notice of policy cancellation.

It is the law that a contractor has an insurable interest in the building for which he furnishes skill and material, and that he may protect his interest through an insurance policy on the premises. *Clarke & Cohen v. Hartman & Co.,* 105 Pa.Super. 118, 159 A. 460 (1932); 44 C.J.S. Insurance § 185 (1945). However, there must actually be work done on the premises and therefore money owed the contractor. In this case, Yelen testified he had been working on the Campbell building during the year prior to the fire. He said he was replacing partitions and doing plumbing, heating, and carpentry work. Campbell testified that the contractor replaced partitions and windows, did some plastering work, and made a change in the stairway. To the contrary, there is testimony by a fireman called to the fire that there were no signs of remodeling being done on the premises, but that the steps were old and creaked, paint and wallpaper were peeling off the walls, and the building was in a general state of disrepair. Given this factual situation, the jury had the right to refuse to believe the testimony of Campbell and Yelen and could have reasonably found that Yelen had no insurable interest in the premises. Thus, the instruction of the court could have had no deleterious effect on the jury since the contractor could not recover under the policy which insured premises in which he held no insurable interest.[5]

5. The face of the insurance policy read: "Name of Insured: Patrick Campbell and/or Morris Yelen and/or Mary P. Yelen."
Only Campbell's address appeared on the face of the policy. This designation on the policy may be construed to give the contractor an independent insurable interest since he is named under the caption "insured." The addition of the "as their interests may appear" clause signifies the parties are entitled to various shares in the proceeds, if they are entitled to any proceeds at all. Keeton, *Insurance Law* 174–183 (1971). The lower court opinion construed this clause to be a mere open loss payee clause whereby the contractor's

■■ In the event the jury found Yelen had an insurable interest, they then had to decide whether the policy had been cancelled. The insurance policy in question, which was entered into evidence as plaintiff's exhibit number 1, was on the standard form required by statute for a fire insurance policy.[6] The policy provision for cancellation requires the company to give the insured a five days' written notice of the cancellation.[7] Case law construes this to require receipt of the notice of cancellation. *Hendricks v. Continental Insurance Co.*, 121 Pa.Super. 390, 183 A. 363 (1936); *Pomerantz v. Mutual Fire Ins. Co.*, 279 Pa. 497, 124 A. 139 (1924); *Keystone Ins. Co. v. Morello*, 61 Pa. Dist. & Co.2d 616, 96 Montg. 94; affd per curiam 225 Pa.Super. 756, 306 A.2d 344 (1972). Where the fact is established that the notice of cancellation is actually mailed, then a presumption of due receipt may be applied. This presumption of receipt may be rebutted by testimony to the contrary; however, when the rebutting testimony is only oral, the question of the credibility of the witnesses is one for the jury to decide. *Neubert v. Armstrong Water Co.*, 211 Pa. 582, 61 A. 123 (1905).

■ In the instant case, the insurance company introduced into evidence as defendant's exhibit Number 1, the

rights are derivative of the rights of the insured owner's. This interpretation would justify the judge's charge that a defense against the owner is also a defense against the contractor. Despite this possibility for different interpretations of the face of the policy, we feel a jury finding of fact that Yelen did not have an insurable interest is supported by the evidence.

6. Act of May 17, 1921, P.L. 682, § 506, added August 23, 1961, P.L. 1081, § 1; 40 P.S. § 636.

7. The text of the policy reads: "Cancellation of policy. This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premiums above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days written notice of cancellation with or without tender of the excess premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

company's copy of the original notice of cancellation.[8] The notice was addressed to Campbell and Yelen at Campbell's address, just as the face of the policy read. On the face of the notice is a metered postmark, affixed at the insurance company's office, and an additional postal date of mailing stamp reading "Wilkes-Barre, PA, S.A.A." and the date. The notice was signed by an authorized representative of the insurance company, although the reverse side containing a "Statement of Mailing" was not signed. Testimony of the insurance company witness revealed he knew the customary procedures for mailing such notices, but the act of mailing this particular notice was not established. In such a situation, the issue of whether this particular notice was mailed was one of fact for the jury. *Paul v. Dwyer,* 410 Pa. 229, 188 A.2d 753 (1963); *Verecchia v. DeSiato,* 353 Pa. 292, 45 A.2d 8 (1946); *Mackiw v. Pa. T. & F. Mutual Cas. Ins. Co.,* 201 Pa.Super. 626, 193 A.2d 745 (1963). If the jury found that the notice was mailed, then the rebuttable presumption of due receipt is applicable to determine whether the provision for cancellation of the policy was met.

When reviewing the facts of this case, we conclude the jury could have found, from the tangible evidence on the face of the notice of cancellation, that such a notice was mailed. The jury then had the right to disbelieve the testimony of Campbell and Yelen concerning non-receipt. Thus we adopt the reasoning of the lower court [9] in finding

8. Defendant's second exhibit was a blank "Notice of Cancellation" form. The top sheet is the company's copy. The remaining six sheets of the form are carbons of the first sheet that are to be sent to the insured, mortgagee, broker, field office, and a control copy.

9. ". . . where there is *no positive evidence of the mailing of the particular item in question,* no presumption of receipt arises from the mere proof of a custom of mailing. . . . Here, however, we have positive documentary evidence . . . that a clear and unequivocal notice of cancellation was mailed. . . . [P]roof of a custom in reference to mailing "in this case, by [the fire underwriter's] testimony, together with proof that a particular item was mailed pursuant to such customs (in this case the presence of the *U.S.* postmark and . . . certification [by an employee] on defendant's Exhibit No. 1) raise a presumption of due receipt in the ordinary course of mail delivery. . . ."

that the jury could have found the cancellation was effective which would cut off the contractor's right to recover.[10] Such a finding for the insurance company is supported by the evidence and the lower court instruction was not in error.

## II.

██ ██ The notice of cancellation in the case was admitted into evidence as an exception to the hearsay rule under the Uniform Business Records as Evidence Act."[11] The Act states, in pertinent part,

> "A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." 28 P.S. § 91b.

Appellants contend, that the witness of the insurance company was not the actual "custodian" or "other qualified witness" of the specific notice of cancellation in this case and hence the notice of cancellation should not have been admitted into evidence under this Act.

The record reveals that at the time the notice was allegedly sent, the insurance company's witness was in control of cancellation notices. He testified he checked the notices after they were typed, signed the notices, and forwarded

10. Appellant argues that even if the notice was effective as to Campbell it was not effective to Yelen because only one notice was sent, addressed to all the parties, at the owner's address as indicated on the face of the policy. Ordinarily this might be a valid argument. However, in this case, both Campbell and Yelen testified they never received a copy of the original insurance policy, yet a paragraph from their complaint was read into evidence stating they had received the policy. This evidence demonstrates adequately that since both the policy and notice of cancellation were sent to and received at the only address furnished on the policy, Yelen did receive the notice of cancellation.

11. Act of May 4, 1939, P.L. 42, No. 35, § 1–4, 28 P.S. § 91a–d (1958).

them to the mailing department of the company. In this particular instance, a signature other than that of the witness appeared on the notice. Appellants argue that this fact removed the witness from being "qualified" to testify concerning the notice in question.

The business records exception to the hearsay rule was meant to allow for the situation where larger departments for recording business transactions make it virtually impossible to identify each person at each phase of the recording and mailing process.

> "Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations—a result diametrically opposed to the Uniform Business Records as Evidence Act." *Fauceglia v. Harry,* 409 Pa. 155, 159, 185 A.2d 598, 600 (1962).

Although the witness in the instant case had no personal recollection of the notice of cancellation addressed to appellants, he did know the customary procedures of the company. Thus we find the witness was properly "qualified" to testify concerning this notice of cancellation, and the notice was properly introduced into evidence as a business records exception to the hearsay rule.[12]

Order of the lower court affirmed.

JACOBS, President Judge, and SPAETH, J., concur in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

12. Appellants argue further that any testimony concerning the cancellation was improperly admitted because the issue was whether the notice was mailed. They rely on *Barge v. Nationwide Mutual Fire Ins. Co.,* 52 Luz. Leg. R. 89 (1962) that found where there was no evidence that a particular notice was typed, addressed properly, and delivered to the post office, the defense of effective cancellation was not made out. In *Barge,* the opinion of the court does not state the notice of cancellation was introduced into evidence with a postal stamp on it as was the notice in the instant case.