Joseph G. LAROCQUE

v.

**RHODE ISLAND JOINT REINSUR-
ANCE ASSOCIATION.**

No. 86–30–Appeal.

Supreme Court of Rhode Island.

Feb. 4, 1988.

Walter F. Richardson, III (Gazerro & Richardson), West Warwick, for plaintiff.

John P. McGann (Coffey, McGovern, Noel & Neal), Kenneth Neal, Providence, Dennis R. Gannon, Warwick, for defendant.

OPINION

FAY, Chief Justice.

This matter comes before the court on an appeal by the Rhode Island Joint Reinsurance Association of a judgment by the trial justice that the defendant insurer failed to give adequate notice of the cancellation of an insurance policy. We sustain the trial justice's decision.

The facts relevant to this action are as follows. On September 27, 1979, plaintiff, Joseph G. Larocque, applied to defendant, Rhode Island Joint Reinsurance Association, for fire insurance on property he owned at 298 Bayview Avenue, Cranston, Rhode Island. The plaintiff had previously insured the premises with defendant; however, he was applying for an increased

amount of insurance as mandated by plaintiff's mortgage holder, the Industrial National Bank.

Pursuant to the terms of the policy, an inspection of the premises was required. Arrangements were made for the inspection. However, on the date of the appointment, plaintiff overslept and failed to meet the inspector at the specified time. The defendant claims that its inspector left two messages for plaintiff to call him and to arrange another time for the inspection. The plaintiff denies receiving any such messages. The defendant, on or about December 11, 1979, mailed to plaintiff at his last and usual address a letter notifying him that a notice of cancellation would be issued if he did not return the letter within five days to arrange for an inspection of the property. For various reasons, plaintiff did not respond to the letter.

Because no inspection was made of the property, defendant, on January 10, 1980, sent by certified mail, return receipt requested, a notice of cancellation to plaintiff at his usual address. The plaintiff's wife had no knowledge of the contents of the letter and thus refused to sign for or accept its delivery. She did, however, retain a postal notice-of-delivery slip, which we note did not identify the sender. The plaintiff did not pick up the certified letter at the post office, and ultimately it was returned to defendant unsigned.

The plaintiff asserts that on the evening of February 15, 1980, while reviewing his bank statements and various bills, he opened a letter dated January 31, 1980, from the Industrial National Bank. This letter informed him that the bank had received a cancellation notice of the insurance coverage of the property at 298 Bayview Avenue. The following day the building was completely destroyed by fire. Shortly thereafter, plaintiff was informed that defendant denied any liability under the policy and refunded to plaintiff the unused portion of the premium. The plaintiff maintains that the insurer's cancellation of his policy was improper owing to lack of notice; thereby, rendering the company liable under the policy.

■ Rhode Island insurance law requires the insurer to give notice of cancellation to the insured before termination of any insurance policy. Regulation XI, Section IX, issued by the Rhode Island Insurance Commission, pursuant to statutory authority, G.L. 1956 (1979 Reenactment) § 27-5-3, states as follows:

"(1) All insurers participating in the program shall give thirty days notice prior to cancellation or nonrenewal of risk eligible under the plan."

■ This court has never defined what minimum acts on behalf of the insurer sufficiently constitute "giving notice" to the insured. It is well settled in this jurisdiction that notice of cancellation of an insurance policy must strictly comply with the cancellation provisions of the policy. In *Capuano v. Kemper Insurance Companies*, 433 A.2d 949, 953 (R.I.1981), quoting a Delaware case, this court adopted rather stringent language with regard to notice of cancellation.

" 'In the absence of fraud or mistake, the power to cancel an insurance policy during the period for which premium has been paid must be founded upon a term of the policy. The policy may empower the insured or the insurer to cancel the policy and may specify the method of cancellation. 3 Richards on Insurance; p. 1366.9, § 144. In order for a cancellation to be operative, the method of cancellation provided in the policy must be strictly complied with.' [Citations omitted.] *Beach Treat, Inc. v. New York Underwriters Insurance Company*, 301 A.2d 298, 300 (Del.Super.1972)."

This rule requiring strict adherence to the language of the policy affords a protective shield to the insurance consumer. The language in the policy in the case at bar and in the applicable regulations does not specify what acts constitute giving notice.

The defendant would have the language "give notice" equivalent to a form of "implied actual notice." This situation would exist where one acquires knowledge of facts that are reasonably informative of the existence of an ultimate fact and a reasonably cautious person would thereby

be led to the ultimate fact. *Hardy v. Zoning Board of Review of Coventry*, 113 R.I. 375, 381, 321 A.2d 289, 292 (1974). In essence, one would be presumed to have knowledge of an ultimate fact if the evidence was such as to put him upon inquiry. *See Fritz v. Pennsylvania Fire Ins. Co.*, 85 N.J.L. 171, 88 A. 1065 (1913); *Rose Inn Corp. v. National Union Fire Ins. Co.*, 133 Misc. 440, 232 N.Y.S. 351 (1929). When construing the terms of an insurance policy, any ambiguity that is created when applying the usual and ordinary meaning to the relevant terms must be construed against the insurer. *Malo v. Aetna Casualty & Surety Co.*, 459 A.2d 954, 956 (R.I. 1983); *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782 (R.I.1982); *Hughes v. American Universal Insurance Co.*, 423 A.2d 1171 (R.I.1980); *Elliott Leases Cars Inc. v. Quigley*, 118 R.I. 321, 373 A.2d 810 (1977); 43 Am. Jur.2d *Insurance* § 391 (1982).

■ Public policy dictates that the insured receive actual notice of cancellation. The purpose of a notice of cancellation of an insurance policy is to furnish the insured sufficient time to seek out and obtain coverage elsewhere before the termination of the existing policy. *Capuano v. Kemper Insurance Companies*, 433 A.2d 949 (R.I.1981); *see Taylor v. MFA Mutual Insurance Co.*, 322 So.2d 842, 845 (La.App. 1975); *Buffalo Insurance Co. v. Best*, 312 S.W.2d 270, 271 (Tex. Civ. App. 1958).

■ Although this is the first time that this court has addressed the issue of "giving notice" to the insured, other jurisdictions have already done so. The majority of those jurisdictions that have dealt with this issue have held that giving notice to the insured, in absence of a provision specifying the manner in which it should be given, generally requires actual receipt of notice. One court has stated:

"Where the policy provision dealing with notice of cancellation provides that the policy may be cancelled by giving notice to the insured in a specific number of days, as in this case, actual receipt by the insured of such notice is a condition precedent to cancellation of the policy by the insure[r], and the notice of cancellation mailed by the insurer but not received by the insured is consequently ineffective as a cancellation. Whether the condition precedent to cancellation of the policy [is] satisfied * * * remains a fact in issue." *Nunley v. Florida Farm Bureau Mutual Insurance Co.*, 494 So.2d 306, 307 (Fla.Dist.Ct.App.1986).

In the instant case the policy and the statutory regulations do not stipulate the particular form in which notice must be given. The Supreme Court of Vermont in *Rocque v. Co-operative Fire Insurance Association of Vermont*, 140 Vt. 321, 325, 438 A.2d 383, 385 (1981) has stated:

"[G]iving notice to the insured in a specified number of days, without stipulating any particular form or way in which such notice must be given, *actual receipt* by the insured of such notice is a condition precedent to a cancellation of the policy by the insurer. 43 Am. Jur.2d Insurance § 408; Annot., 64 A.L.R.2d 982, 994 (1959)." (Emphasis added.)

*See also DiProspero v. Nationwide Mutual Fire Insurance Co.*, 30 Conn.Supp. 291, 311 A.2d 561 (1973); *Aetna Insurance Co. v. Settembrino*, 324 So.2d 113 (Fla. Dist. Ct. App. 1975); *Osborne v. Unigard Indemnity Co.*, 719 S.W.2d 737 (Ky.Ct.App. 1986); *Schneider v. Plainview Farmers Mutual Fire Insurance*, 391 N.W.2d 68 (Minn.Ct.App.1986); *Campbell v. Royal Indemnity Co. of New York*, 256 Pa.Super. 312, 389 A.2d 1139 (1978); 6A Appleman, *Insurance Law & Practice*, § 4186 (1972).

■ Where the policy provides that cancellation may be effected by mailing notice, the general rule is that notification is fulfilled by proof of mailing. *Clary v. Empire Mutual Insurance Co.*, 30 Conn.Supp. 113, 303 A.2d 26 (1972); *Thomas v. Veltre*, 381 A.2d 245 (Del.Super.Ct.1977); *Feldt v. Union Insurance Co.*, 240 Kan. 108, 726 P.2d 1341 (1986); *Wisniewski v. State Farm General Insurance Co.*, 25 Wash. App. 766, 609 P.2d 456 (1980). *See also* 29 Am. Jur.2d *Evidence* § 194–198 (1967).

The distinction between the requirements of giving notice and mailing notice has been stated by one court:

" ' "[G]iving notice' is not the same requirement as 'mailing notice' and demands more. Even where facts show that a cancellation notice was mailed to the insured, if the policy demands that notice be 'given' and the notice was never received, the notice is ineffective as a valid cancellation." *Rocque,* 140 Vt. at 325, 438 A.2d at 386.

 The defendant contends that to require actual receipt of notice of cancellation would enable the insured to effectively prevent cancellation of the policy by ignoring or "dodging" notice. The court in *Rocque* places a heavy burden upon the insurer by requiring actual receipt of notice where the policy demands that notice be given, even when a proof of mailing by ordinary postage with the requisite return address has been fully established. This court holds that the term "giving notice" absent anything more does require actual receipt of notice; however, this receipt may be presumed by proof of an ordinary mailing. *Osborne,* 719 S.W.2d at 741; *Campbell,* 256 Pa.Super. at 317, 389 A.2d at 1142.

We note that the letter dated December 11, 1979, was not a notice of cancellation but rather a warning that if the inspection was not completed, a notice of cancellation would follow at a later date. This notice did follow. However, defendant, although acting out of an abundance of caution by sending notice via certified mail instead of regular postage, increased the risk of nondelivery. This risk of nondelivery usually has been placed on the insurance company. One court has addressed this issue squarely and commented:

> "Had the notice been sent * * * by ordinary mail, the chances of it being received would have been much more likely than if sent by registered mail, requiring for delivery a personal call from the addressee * * *. By attempting to insure delivery of the notice through the more certain means of registry, defendant thereby incurred a greater danger of nondelivery * * *." *Alexander v. State Farm Mutual Automobile Insurance Co.,* 148 So.2d 898, 904 (La.Ct.App.1962) (quoting *Long v. Home Indemnity Co.*

*of New York,* 169 So. 154 (La.Ct.App. 1936)).

The defendant in this case did not follow through with its deliberate attempt to notify the plaintiff. Upon receiving the certified letter returned unsigned for, the defendant was clearly aware of the possibility that the plaintiff had no knowledge of the notice of cancellation. As we previously stated, the postal-delivery slip did not identify the sender of the certified letter. In these circumstances fundamental fairness requires that the defendant should have done more to ensure that the plaintiff was duly notified. Had the defendant sent the notice by ordinary mailing, not only would the chance of its being received have been much more likely, but it would also have created the presumption of receipt. *Osborne,* 719 S.W.2d at 741; *Campbell,* 256 Pa.Super. at 317, 389 A.2d at 1142. This presumption, however, is rebuttable and the question of the credibility of the rebutting testimony is for the trier of fact to decide. *Campbell,* 256 Pa.Super. at 317, 389 A.2d at 1142 (citing *Neubert v. Armstrong Water Co.,* 211 Pa. 582, 61 A. 123 (1905)).

On the basis of the foregoing, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.