DECISION
This matter is before the Court on cross motions for summary judgment on an action for breach of contract arising out of an insurer's denial of a physical damage coverage insurance claim for property damage resulting from a motor vehicle accident in July of 2003. Plaintiff, Thomas Thalmann, ("Plaintiff" or "Thalmann") maintains he had active physical damage coverage at the time of the accident. Defendant, Progressive Max Insurance Company, ("Defendant" or "Progressive") maintains that the physical damage coverage was suspended. Plaintiff filed this timely action seeking recovery under the policy. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The uncontroverted facts before the Court are as follows: Plaintiff had contracted with Defendant for property damage coverage of his 2002 Porsche automobile on April 17, 2003. Coverage was to extend from April 19, 2003 through October 19, 2003. In order to obtain better pricing, the entire premium was paid in full. In addition to the property damage coverage, both during and after the period in question, Plaintiff maintained liability coverage through Progressive on the 2002 Porsche and his other vehicles. Upon concluding the contract for *Page 2 
property damage coverage and in a follow up letter dated April 21, 2003, Plaintiff was informed of his obligation to have the car photo inspected. Plaintiff never got the inspection. On May 8, 2003, Plaintiff was mailed a letter from Defendant indicating that his coverage was suspended as of May 3, 2003. Plaintiff was involved in a car accident on July 11, 2003 and informed Defendant of his intention to file a damage claim. In a letter dated July 28, 2003, Defendant denied Plaintiff's claim indicating that his coverage had lapsed due to his failure to obtain the photo inspection. Plaintiff then filed this timely action.
 II Standard of Review
It is well settled that "[i]n deciding whether to grant a motion for summary judgment, the trial justice must review the pleadings, the affidavits, the admissions, the answers to interrogatories, and other items in the light most favorable to the nonmoving party. If this review reveals no issues of material fact, the trial justice must then decide if the moving party is entitled to judgment as a matter of law."Ashey v. Kupchan, 618 A.2d 1268, 1269 (R.I. 1993). If, after considering the evidence, the motion justice concludes that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.Willis v. Omar, 954 A.2d 126, 129 (R.I. 2008).
 III Analysis
Plaintiff argues that he is entitled to summary judgment because his notice of suspension was ineffective to cancel the policy and because the purported cancellation was ambiguous. Thalmann relies on the Department of Business Regulation, Division of Insurance, Regulation 77 ("Regulation 77") to argue that the notice of suspension was ineffective because it was sent out *Page 3 
of time. Regulation 77, § 10(2), requires that an insurer send a notice of suspension within 3 business days. Suspension was effective May 3, 2003, but notice was not sent until May 8, 2003. Plaintiff argues that the rule commanding that the requirements for notices of cancellation are to be strictly construed against the insurer applies to suspensions as well. Thus, Plaintiff argues, because the Defendant sent the required notice of suspension a day late, that notice was ineffective to suspend coverage under the contract. In arguing that the suspension was ambiguous, Thalmann points to a number of communications received from Progressive, after the purported cancellation, which did not mention the change in coverage. He also points to the fact that he was never tendered a refund of his pre-paid premium. Therefore, he contends, because ambiguity in coverage cancellation is resolved in favor of the insured, he should be deemed covered under the policy. As such, Thalmann argues, because the notice of suspension was ineffective and because any suspension, if effective, was ambiguous, there is no genuine issue of material fact as to whether he was covered by the policy and he is entitled to judgment as a matter of law.
In response, Defendant points to the purpose of Regulation 77, which is, to "establish standards and procedures for inspection of vehicles prior to the issuance by insurers of Physical Damage Coverage," as evincing a legislative intent to protect insurers by requiring owners prove the good condition of their vehicle before the insurer is held liable for property damage coverage. Regulation 77 § 2. Accordingly, to find coverage in this case would lead to the absurd and unjust result of allowing the Plaintiff, who neglected to fulfill his obligation under both the contract and the regulatory scheme, to use a statute designed to protect the insurance company, as a weapon against it. With respect to the question of the clarity of the suspension, Defendant points out that Plaintiff was sent a letter, as required by state law, clearly informing Plaintiff of *Page 4 
his suspension coverage, and that the additional correspondence with Progressive are explained by the fact that Plaintiff maintained liability coverage with them on the same and other vehicles.
Under G.L. 1956 § 42-14-17, [1] the Director of the Department of Administration may issue regulations concerning the inspection of private vehicles prior to the issuance of property-damage insurance. Pursuant to this authority, the Director promulgated Regulation 77. Regulation 77 exists "to establish standards and procedures for inspection of private passenger vehicles . . . prior to the issuance by insurers of Physical Damage Coverage." Id. at § 2. Regulation 77, Section 10, establishes the standards for suspension of physical damage coverage. Under that section:
 . . . [If] the inspection is not conducted prior to the expiration of the ten (10) business days deferral period, motor vehicle Physical Damage Coverage on the motor vehicle shall be suspended at 12:01 a.m. of the day following the tenth business day, and such suspension shall continue until the inspection is done. . . . Id. at § 10(1).
Section Ten also establishes the notice requirements that accompany the suspension:
 Whenever Physical Damage Coverage is suspended, the insurer shall within three (3) business days give notice to the applicant, the producer of record, and any lienholders a completed prescribed NOTICE OF SUSPENSION OF PHYSICAL DAMAGE *Page 5 
COVERAGE (Form C) . . . Whenever there is a suspension of Physical Damage Coverage for more than ten (10) days, the insurer shall make a pro-rata premium adjustment (return premium or credit) which shall be mailed to the applicant no later than forty-five (45) days after the effective date of the suspension. After the insurer makes the pro-rata premium adjustment, reinstatement of Physical Damage Coverage shall only be effective upon inspection and payment by the applicant to the insurer of the adjusted premium for the Physical Damage Coverage in full or in accordance with the insurer's normal payment plan, at the insurer's option. Id. at § 10(2).
Finally, Section Ten establishes the consequences for the insurer's failure to inspect under the regulation:
 If the motor vehicle is not inspected pursuant to this Regulation due to the fault of the insurer, or if its producer fails to give the verbal or telephone notice required by this Regulation, or fails to mail or deliver the NOTICE OF MANDATORY PRE-INSPECTION REQUIREMENT (Form B) or obtain the ACKNOWLEDGMENT OF REQUIREMENTS FOR PRE-INSPECTION INSPECTION (Form D), Physical Damage Coverage on the motor vehicle shall not lapse. The failure of the insurer to act promptly does not relieve it of its obligation to inspect. Id. at § 10(2).
Here, Plaintiff argues that the notice of suspension, sent on the fourth instead of the third day after the suspension of coverage, constituted ineffective notice and as such, invalidated the suspension. Plaintiff points to Capuano v. Kemper Ins. Companies, 433 A.2d 949, 953
(R.I. 1981) ("When insurance coverage is being canceled, public policy demands strict compliance with the cancellation provisions of the policy."); Automobile Club Insurance Company v. Barbara and JamesDonovan, 550 A.2d 622, 623 (R.I. 1988) (". . . [W]hen an insurer fails to comply with the insurance regulations regarding cancellation of coverage, there is no effective cancellation."); and Larocque v. RhodeIsland Joint Reinsurance Association, 536 A.2d 529, 530 (R.I. 1988) ("It is well settled in this jurisdiction that notice of cancellation of an insurance policy must strictly comply with the cancellation provisions of the policy.") for the well *Page 6 
established proposition that insurance companies must strictly comply with the regulations promulgated for canceling insurance policies in order for those cancellations to be effective.
Plaintiff's reliance on those cases, however, is misplaced, as each of those cases deals with cancellation of coverage, as provided for by Department of Business Regulation, Division of Insurance, Regulation 16 ("Regulation 16"), whereas this case is governed by the law of physical damage suspensions as provided for by Regulation 77. In contrast to Regulation 16, which specifically requires that "[n]o insurer shall exercise its right to cancel a policy unless a written notice of cancellation is mailed or delivered to the named insured, at the address shown in the policy, at least thirty (30) days prior to the effective date of cancellation . . ., "[2] Id. at § 5(B), Regulation 77, the regulation at issue in this case, requires that "[w]henever Physical Damage Coverage is suspended, the insurer shall within three (3) business days give notice to the applicant." Id. at § 10(2). Thus, unlike a cancellation which is a contractual prerogative of the insurer that becomes effective only after a notice is sent, a suspension becomes effective by operation of law immediately "at 12:01 a.m. of the day following the tenth business day" when no inspection has occurred.Id. at § 10(2).
The distinction between cancellation and suspension makes sense in light of the public policy under girding Rhode Island's automobile insurance regulatory scheme. The legislature has seen fit to mandate that all vehicle operators carry liability insurance and punish those who fail to do so. See § 31-47-9 (providing for an escalating scale of civil penalties including mandatory license suspension and fines for those operating a vehicle without the minimum required insurance). "It is well settled in Rhode Island that the purpose of providing notice of cancellation of an insurance policy is to make the insured aware that the policy is being *Page 7 
terminated and to afford the insured the time to obtain other insurance prior to termination of the existing policy." Automobile Club,550 A.2d at 623. Yet, in the case of a suspension, unlike a cancellation, there is no need to void the suspension for late notice because the suspension is already in effect and the reason for the suspension is the sole fault of the insured. Indeed, in the rare circumstance where the fault for not obtaining an inspection rests with the insurer rather than the insured, the Regulation provides that the coverage "shall not lapse." Reg. 77, § 10(3). Furthermore, were this Court to accept Plaintiff's proposed construction of the statute, an insurer who failed to send a timely notice of suspension would have no opportunity to cure and would in essence be stuck without a way to suspend the coverage until the inspection occurred. In contrast, an insurer seeking to cancel a policy would simply need to send an additional notice providing sufficient lead time between the mailing and the date of cancellation. This Court refuses to find that the legislature intended such an irrational result.
That is not to say that the regulations are entirely unconcerned with notification. In providing that the insurer send notice of the suspension within three days, the statute would seem to be concerned with ensuring that the insured is aware that the consequences of his actions have actually resulted in the statutorily mandated result and to provide him with the opportunity to end the suspension by having an inspection. A much more difficult case might be where the notice of suspension were sent late and in the time between when it would have initially been received and when it was actually received, the Plaintiff has an accident and seeks recovery. That, however, is not the case before the Court; rather Plaintiff had ample notice, well over a month, and opportunity to have the inspection. He did not. Thus, in light of the clear notice of the suspension provided with more than ample time for Plaintiff to cure his performance deficiencies *Page 8 
and the Plaintiff's neglect in doing so, the Court concludes that the late notice, sent a day after the insurer was required to by Regulation 77, did not void the statutorily imposed suspension.
Plaintiff further argues that the Court should make a finding of coverage because the suspension was not "clear, definite, and unequivocal [] declare[ing] that as of a certain date the insurer is no longer bound under the policy." Automobile Club, 550 A.2d at 623. In support of his argument, Plaintiff points to the fact that he continued to receive communications from the Defendant and that those further communications failed to indicate that the property damage coverage on the 2002 Porsche had been suspended. Plaintiff also points to Progressive's failure to timely mail a pro-rata premium adjustment within the 45 days provided for by Regulation 77 as evidence that the suspension was not the "clear, definite, and unequivocal" declaration required under Automobile Club, 550 A.2d at 623.
The "clear, definite, and unequivocal" standard has never been explicitly applied to suspensions. Id. This is probably because Regulation 77 provides a specific form to be sent notifying the insured of his suspension, and as such, the form is deemed clear and effective as a matter of law. In this case it is uncontroverted that Plaintiff was sent and received the notice required by Regulation 77 entitled "Notice of Suspension of Physical Damage Coverage — You Are No Longer Insured for Physical Damage to Your Car." Thus, there can be no question that the suspension was clear and unambiguous as a matter of law. Furthermore, even assuming the Automobile Club standard were applicable to suspensions, the Defendant's failure to timely tender the pro-rata adjustment fails to cast doubt on the definite and unequivocal nature of the statutorily required notice of suspension. The effect of the premium adjustment provision is not to undo the statutorily imposed suspension but to require that an inspection accompany any future attempt at reinstatement of the policy, ". . . reinstatement of the policy shall only be *Page 9 
effective upon inspection and payment by the applicant." Regulation 77 § 10(2). Thus, this Court concludes that the Plaintiff received the notice required by Regulation 77 and that such notice was clear, definite, and unequivocal as a matter of law.
 IV Conclusion
In light of the above analysis, the Court concludes that Plaintiff's physical damages coverage was suspended by operation of law notwithstanding Defendant's late notice. The Court also finds that the notice sent by Defendant and received by Plaintiff was all the notice of suspension required by law and that it was clear, definite, and unequivocal as a matter of law. Given all of the foregoing, the Court denies Plaintiff's motion for summary judgment. Because there remains no genuine issue of material fact and it is entitled to judgment as a matter of law, the Court grants Defendant's cross motion for summary judgment.
Counsel for Defendant shall submit an appropriate order for entry in accordance with this Decision within ten days from issuance of this Decision.
[1] § 42-14-17 provides:
 The director of the department of business regulation may promulgate such rules and regulations as are necessary and proper to carry out the duties assigned to him or her by this title or any other provision of law.
In turn, § 27-10.1-10 provides:
 No motor vehicle liability policy or endorsement insuring a private passenger motor vehicle weighing less than ten thousand (10,000) pounds for physical damage coverage, shall be issued in the state of Rhode Island unless the insurer has inspected and photographed the motor vehicle in accordance with rules and regulations set forth by the insurance division of the department of business regulation. This section does not apply to motor vehicles rated or insured under a commercial motor vehicle insurance policy. An insurer may elect to waive inspections and photographs for all motor vehicles upon written notice to the department of business regulation.
[2] Regulation 16 makes an exception for non payment where notice may be sent no less than ten days before the effective date of cancellation.