DECISION
Before the court is an appeal by Steven M. Clarke (Clarke) from a decision of the Rhode Island Ethics Commission (commission) imposing a $4,000 civil penalty against Clarke for violations of the Code of Ethics, G.L. 1956 § 36-14-5 (a), § 36-14-7 (a), and § 36-14-5 (d). Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
Facts and Travel
On February 25, 1994, Roger Anthony (Anthony), the president of an engineering firm, filed a complaint with the commission against Clarke. In the complaint, Anthony alleged that as a member of the Rhode Island Board for Professional Engineers (Engineering Board), Clarke, who is subject to the Code of Ethics, being an appointed official, participated in proceedings to suspend Anthony's company from practicing engineering for one year. At the time of the suspension Anthony was engaged in a construction project in Narragansett, Rhode Island. Following its suspension, Anthony's firm was replaced on the project by Clarke's firm, Commonwealth Engineering. This, alleged Anthony, was "a direct conflict of interest and a breach of ethics."
Notice of the complaint was sent to Clark who, in turn, denied the allegations. Pursuant to its authority under G.L. 1956 § 36-14-12, the commission launched an investigation into Clarke's alleged misconduct. Martin Healey (Healey), the executive director of the commission, was named chief prosecutor in the matter. Under § 36-14-12 (c), "Upon receipt of a written complaint alleging a violation of this chapter, the commission shall within one hundred eighty (180) days of receipt of the written complaint complete its investigation; provided that, the commission may, for good cause shown, grant no more than two (2) extensions of sixty (60) days each." Thus, barring any extension of time, the commission's investigation into Clarke's alleged improprieties was scheduled for completion on August 24, 1994. However, on August 19, 1994, Healey moved for a sixty-day extension. On August 24, 1994, the motion was heard by the commission and granted. Clarke was not present at the hearing.
The commission now had until October 23, 1994, to "complete its investigation." However, on October 12, 1994, a second motion for a sixty-day extension of time was filed. This motion was heard on October 19, 1994. The motion was granted though Clarke again failed to appear and offer a challenge. The commission's new deadline was then set as December 22, 1994.
On December 28, 1994, an "Investigative Report and Motion to Amend Complaint" was filed with the commission by Healey. After summarizing the pertinent facts gleaned from the investigation, Healey recommended to the commission that Clarke had violated § 36-14-5 (a) through his "participation in investigative and enforcement actions involving Roger Anthony." Additionally, Healey recommended that the complaint against Clarke be amended to add new violations in relation to Clarke's similar participation in a matter involving a James Salem (Salem). Healey alleged that during the investigation into the original complaint, evidence of more wrongdoing by Clarke was discovered. In particular, it was found that Clarke sat on the Engineering Board at the time it was investigating Salem for practicing engineering without a license. Salem apparently headed a private company that specialized in traffic studies and analysis and, though not a professional engineer, he had allegedly held himself out as such before zoning boards in connection with his involvement in various construction projects. In October 1990, Salem received a letter from the Engineering Board delineating certain terms and conditions under which he could testify before a zoning board.
In late 1992, Salem was hired to perform a traffic impact study by a general contractor overseeing a development in the Town of Cumberland known as the Chelo's project. Salem performed the study and billed the contractor a total of $950. Clarke's engineering firm, Commonwealth Engineering, was also hired to provide various engineering services on the project. In early 1993, the Engineering Board received an anonymous complaint concerning Salem's involvement in the Chelo's project. Thereafter, the Engineering Board forwarded a letter to Cumberland's Town Solicitor expressing concern over Salem's anticipated testimony before the Cumberland Zoning Board regarding the traffic impact study. The Engineering Board indicated that Salem was not a registered engineer and that it was the Board's position that any traffic study be "prepared, signed and stamped by a Registered Professional Engineer and not by an individual who calls himself a traffic consultant." As a result of this letter, Salem was not paid for the project. Rather, the contractor hired Commonwealth Engineering to complete the traffic study. Clarke's firm obliged and was compensated $2000.
After discovering these facts, Healey proposed Anthony's complaint be amended to include charges that Clarke violated § 36-14-5 (a), § 36-14-7 (a), and § 36-14-5 (d) as a result of his involvement in the Salem matter. On January 19, 1995, the commission issued a notice to Clarke regarding the scheduling of a probable cause hearing and his right to appear to contest the allegations against him relating to both the Anthony and Salem matters. On March 29, 1995, the parties came before the commission and both sides presented arguments. Subsequently, on March 30, 1995, the commission issued an "Order and Finding of Probable Cause." In the order, the commission found that probable cause existed to support the original allegations made by Anthony, as well as those made by Healey regarding the Salem matter. Formal hearings were scheduled.
On April 3, 1996, the commission began the hearings on all of the allegations against Clarke. A litany of motions followed delaying presentation of any evidence until April 17, 1996. Of the motions filed by Clarke and denied by the commission was one to dismiss the complaint on the basis that the investigation into the allegations therein was completed beyond the 180-day time period set forth in § 36-14-12 (c) and one based upon the failure of the commission to provide him with a copy of the amended complaint. After said denials, the Rhode Island Supreme Court denied his application for a writ of certiorari on April 17, 1996. Thereafter, the hearing commenced and witnesses appeared on behalf of the commission and Clarke. The proceedings concluded on June 21, 1996. Written closing arguments were supplied to the commission, which then deliberated the matter on July 11, 1996. On July 26, 1996, the commission issued a written decision and concluded that Clarke had violated § 36-14-5
(a), § 36-14-7(a), and § 36-14-5 (d) as a result of his involvement, both as a member of the Engineering Board and a competing engineer, in the Salem matter. He was assessed a $4000 civil penalty, representing $2000 for the violation of §36-14-5 (a) and § 36-14-7 (a), and $2000 for the violation of § 36-14-5 (d). With respect to the charges relating to the original Anthony complaint, the commission found that Clarke's actions failed to represent a violation of the Code of Ethics. Clarke timely appealed the Salem matter assessments.
As the court proceeds to the issues at hand, it will supplement when necessary additional facts gleaned from the record.
Standard of Review
Governing this court's review of the instant appeal is a familiar legal standard. Pursuant to § 42-35-15 (g),
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The court "must uphold [the commission's] conclusions when they are supported by any legally competent evidence in the record." Rocha v. State Public Utilities Commission,694 A.2d 722, 725 (R.I. 1997). Moreover, "[w]hen more than one inference may be drawn from the record evidence, the [court] is precluded from substituting its judgment for that of the [commission] and must affirm the [commission's] decision unless the [commission's] findings in support of its decision are completely bereft of any competent evidentiary support." Id. at 726; see also Sartor v.Coastal Resources Management Council, 542 A.2d 1077, 1083 (R.I. 1988). Finally, the court may reverse the decision of the commission if it finds that the "substantial rights" of the appellant have been prejudiced because the decision rests on any of the six criteria above § 42-35-15 (g); see also BarringtonSchool Committee v. Rhode Island State Labor Relations Board,608 A.2d 1126, 1138 (R.I. 1992).
I
The 180 Day Rule
Section 36-14-12 entitled "Investigative Powers of the commission" provides in pertinent part that:
 "(c) Upon receipt of a written complaint alleging a violation of this chapter, the commission shall within one hundred eighty (180) days of receipt of the written complaint complete its investigation; provided that, the commission may, for good cause shown, grant no more than two (2) extensions of sixty (60) days each.
 "* * *
 "(4) If the commission finds that probable cause does exist to support the allegations of the complaint, it shall prepare written findings which shall state in detail the violations complained of and the manner in which they occurred and shall fix a time for hearing on the matter; provided, however, that, before it issues any findings, the commission shall permit the respondent to submit a written statement and/or to appear in person or by counsel for the purpose of presenting arguments and/or written evidence in response to the allegations against him or her. The respondent shall be entitled to examine and make copies of all evidence in the possession of the commission relating to the complaint. Upon the issuance of any findings, the commission shall notify the complainant and the respondent of its action."
A. The Motions to Extend
Clarke argues that the commission violated the provisions of § 36-14-12 (c)(4) for a variety of reasons. First, he contends that the commission's action in granting the first extension of time on August 24, 1994, was outside the 180-day time period and thus a nullity. Consequently, he insists that any action taken after this extension, such as the commission's granting of the second motion to extend, is also void. Second, he contends that even if the two extensions were properly granted, the commission still failed to meet its own deadline when it issued the investigation report on December 28, 1994. Finally, Clarke challenges the procedure upon which the commission sought to amend the original complaint to add the claims against him.
Alternatively, the commission contends that the 180-day provision was triggered on February 26, 1994, the day after the complaint was filed, and thus the first motion to extend was timely. Further, it maintains that the investigation was completed within the time prescribed by § 36-14-12 (c) because the actual date of completion was December 21, 1994, a day before the deadline. The commission argues that although the investigative report was dated December 28, 1994, information contained in a letter sent by Healey to Clarke's counsel indicates it completion date was on or before December 22, 1994. Finally, the commission defends the amendment of the complaint by noting that its internal regulations allow for the amendment at such a late stage in the investigation.
The court agrees with the commission that the running of the 180-day period commenced on February 26, 1994, the day after the complaint was filed. See, G.L. 1956 § 43-3-13 ("Whenever time is to be reckoned from any day, date, or act done, or the time of any act done, the day, date, or the day when the act is done shall not be included in the computation"); see also Burke v.Rhode Island College, 671 A.2d 803, 804 n.3 (R.I. 1996)("§43-3-13 mirrors the common law which in essence deemed that in computing the time during which an act is required or permitted to be done, the first day is excluded and the last day is included"). Therefore, the commission was required to complete its investigation on August 24, 1994, barring any timely motions for an extension.
However, the commission twice successfully moved for extensions of time despite Clarke's contentions that both extensions were improperly granted because he failed to receive timely notice of the motions (and thus failed to appear in opposition) and that "good cause" did not exist to support the extensions. The commission docket sheet indicates that the first motion was filed with the commission on August 19, 1994, and the motion itself bears the same date. Additionally, the signed certification on the motion reveals that a copy of it was mailed by Healey to Clarke's home address five days prior to the hearing as required by the commission's internal regulations, Regulation 1012. See 22 R.I.R.C. 94 030 002-6. The mailing of this motion to Clarke's usual place of abode created a presumption of receipt.E.g., Harris v. Turchetta, 622 A.2d 487, 489 (R.I. 1993)(finding the "presumption that mail regularly sent from the office of the Secretary of State was received" at the defendant's corporate offices listed on prior reports); LaRocque v. Rhode Island JointReinsurance Association, 536 A.2d 529, 532 (R.I. 1988)(construing the term "`giving notice'" under an insurance policy and holding that "receipt may be presumed by proof of an ordinary mailing"). Moreover, the court finds that such receipt should have been timely and therefore is not persuaded by Clarke's argument that he received notice of the motion only after the hearing had been conducted. The court reaches the same conclusion with respect to the second motion. That motion was filed on October 12, 1994; it bears the same date; and the certification on the motion indicates its forwarding by mail to the same address as the first motion. Therefore, the commission did not err in conducting an ex parte hearing on each of the motions.
The commission, of course, was required to grant the extensions only upon the presentation by Healey of "good cause." A review of the motions and the reasons stated by Healey therein leads the court to conclude that Clarke's substantial rights were not prejudiced by the commission's actions in granting either of the extensions. Both motions contained exactly the same language which, in essence, sought an extension in order to review information obtained through "interviews and documents." While the language may be boilerplate, the court finds that it satisfies the "good cause" requirement of § 36-14-12 (c) when it considers the complexity of the underlying issues and the amount of information necessary for proper disposition of the complaint. Consequently, the date upon which the commission was required to "complete its investigation" under § 36-14-12 (c) was extended by virtue of both motions to December 22, 1994.
B. The Amended Complaint and Completion of the Investigation
In presenting their respective arguments regarding whether the commission timely completed its investigation, both parties focus upon whether the investigation report was filed on December 22, 1994. However, the court finds that § 36-14-12 (c) required the commission to render a probable cause determination by that date and, having failed to do so, did not "complete its investigation" within the meaning of the statute.
In construing the meaning of § 36-14-12 (c), established rules of statutory construction provide that this court must "ascertain and give effect to the intent of the Legislature."Sorenson v. Colibri Corporation, 650 A.2d 125, 128 (R.I. 1994). Further, the court must "consider the entire statute as a whole," Id., and examine "the language, nature and object of the statute." Wayne Distributing v. Rhode Island Commission for HumanRights, 673 A.2d 457, 460 (R.I. 1996). Finally, the court must give the words in the statute "their plain and ordinary meaning,"Matter of Falstaff Brewing Corporation, 637 A.2d 1047, 1049 (R.I. 1994), and then "apply the statutory meaning most consistent with the statute's policies or purposes." In Re Kyle S., 692 A.2d 329, 331 (R.I. 1997).
Prior to July 1992, any complaint filed with the commission which alleged a violation of the Code of Ethics was investigated by a special investigating committee. In June 1991, §36-14-12 (c) was amended to require that this special committee "make its determination pursuant to subsection (d) of this section within one hundred eighty days of receipt of the written complaint." In pertinent part, subsection (d) provided:
 "Upon receipt of a written complaint alleging a violation of this chapter, the chairperson of the commission shall refer the complaint to an investigating committee constituted in accordance with subsection (c) of this section, and:
 "* * *
 "(4) If the investigating committee finds after its preliminary investigation that probable cause does exist to support the allegations of the complaint, it shall prepare written findings which shall state in detail the violations complained of and the manner in which they occurred; provided, however, that, before it issues any findings, the investigating committee shall permit the respondent to appear in person or by counsel for the purpose of presenting evidence or arguments in response to the allegations against him or her. Upon the issuance of any findings, the investigating committee shall (i) submit its detailed findings to the full commission for adjudicative proceedings in accordance with § 36-14-13 and (ii) notify the complainant and the respondent of its action."
These versions of § 36-14-12 (c) and § 36-14-12 (d)(4) clearly provided that the commission was required to prepare written findings of probable cause, after having first permitted an accused a right to respond to the allegations, within 180 days of receipt of the complaint, subject to two sixty-day extensions.See DeAngelis v. Rhode Island Ethics Commission, 656 A.2d 967, 967-968 (R.I. 1995)(construing 1991 amended version of §§36-14-12 (c) and (d) to require the commission "to make findings of probable cause, and if probable cause was found, to prepare written findings within 180 days of the receipt of a written, complaint, with a possibility of two extensions of sixty days each for good cause"). Thus, pursuant to these former provisions of § 36-14-12, an investigation was completed only after a determination of probable cause was reached.
In July 1992, the Legislature amended § 36-14-12. The investigating committees were abolished and the commission as a whole, or a quorum thereof, was vested with the responsibility of investigating a complaint. Another essential change in subsection (c) was the deletion of the phrase "any such investigating committee shall make its determination pursuant to subsection (d) of this section within one hundred eighty days of receipt of the written complaint." Rather, this phrase was replaced with the requirement that "the commission shall within one hundred eighty (180) days of receipt of the written complaint complete its investigation." Accordingly, subsection (d) was deleted as a separate subsection, but its provisions were retained and combined with subsection (c).
Although the wording and arrangement of the current version of § 36-14-12 differs from its predecessor, the court cannot conclude that the Legislature intended any different meaning with respect to the commission's duty during the 180-day period. By prescribing strict time limits, the statute has consistently contemplated an expeditious investigation into an alleged ethical violation, followed by a prompt determination of probable cause. An obvious purpose of such a speedy resolution is to prevent an accused public official from having to wrestle with a complaint for an inordinate amount of time. Thus, to construe the 1992 amendment of § 36-14-12 (c) as transforming the commission's duty to "complete its investigation" into something short of a probable cause determination would contravene this important statutory purpose and, in some cases, render absurd results.Matter of Falstaff Brewing Corporation, 637 A.2d at 1050 ("A statute may not * * * be construed in a way that would result in `absurdities or would defeat the underlying purpose of the enactment'").
Thus considering § 36-14-12 as a whole, and in light of its intended purpose, the court finds that the commission was required to "complete its investigation," within the plain and ordinary meaning of that term, by rendering a probable cause determination by December 22, 1994, The commission failed to do so since the "Order and Finding of Probable Cause" was not rendered until March 30, 1995. Had the complaint contained only an allegation relating to the Anthony matter, this procedural error necessarily would be moot because of the commission's ultimate conclusion that Clarke did not violate the Code of Ethics through his participation in Anthony's suspension and the subsequent involvement of Commonwealth Engineering in the construction project. However, because the original complaint was amended to add allegations of ethical violations in relation to the Salem matter, this procedural deficiency looms large. Healey moved to amend the complaint on December 28, 1994, six days beyond the date that the investigation was to be completed. For this reason alone the amendment must fail. Moreover, had the commission timely amended the complaint, the investigation would not have been completed by December 22, 1994, as the determination of probable cause did not occur until several months later. The commission relies heaving on Casinelli v. RhodeIsland Ethics Commission, C.A. No. 94-2403, wherein a trial justice of this court determined that the 1992 amendment to §36-14-12 reflected a legislative intent to remove the requirement that the commission render a probable cause determination within 180 days of receipt of the complaint. Further, since there was no separate time frame set forth in § 36-14-12 (c)(4), the trial justice concluded that the findings of probable cause did not have to occur within 180 days. Rather, referring to §36-14-12 (c) as "plain on its face," the trial justice found that "while the Commission's inquiry of the matter should be completed within the time frame set out, it is not necessary that a probable cause finding be made in order for the Ethics Commission's `investigation [to] be completed.'" The Casinelli
decision, while instructive, carries no precedential weight and thus will not control the matter presently before the court.
The record evidences that the commission did not timely amend the complaint to include the charges against Clarke, and because it failed to complete its investigation by December 22, 1994, the commission exceeded its statutory authority in pursuing this action and finding the foregoing ethical violations. Consequently, Clarke's substantial rights were prejudiced, in violation of § 42-35-15 (g), compelling the court to conclude that the decision of the commission must be reversed.
II.
Clarke's remaining arguments require only brief discussion, as the prior determination by the court that the commission failed to amend the complaint properly and timely complete the investigation into Clarke's alleged misconduct has rendered these points moot. Clarke argues that the commission's decision was made upon unlawful procedure because Clarke was required by the commission to reimburse it for the cost of the hearing transcript before the commission would forward it to this court. Clarke apparently paid the sum of $2,256 to the commission, though the commission had already ordered the transcript. Section 42-35-15
(d) places upon the commission an obligation to "transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review." The word "transmit" under this section has been recognized as a synonym for the word "send." See A.J.C. Enterprises, Inc. v. Pastore, 473 A.2d 269, 272 (R.I. 1984). Moreover, "there is no obligation on the [commission] to `send' until such time as the appealing party has paid for the cost of the transcript or has taken steps to ensure its payment." Id. Consequently, Clarke was required to reimburse the commission for the cost of the transcript before the commission incurred any obligation to "send" the transcript to this court.
Clarke also contends that the commission's decision was affected by errors of law because Healey crossed the line from being a prosecutor to advising the commission on several occasions during the substantive hearings in this matter. A review of the colloquies identified as improper by Clarke reveals that Healey did not impermissibly offer legal advice to the commission but rather presented persuasive argument, as an advocate, on the particular issues that arose during the proceedings.
Clarke further insists that the commission's decision was affected by error of law because the commission failed to deliberate at the close of all of the evidence but rather requested that the parties submit written closing arguments, reserving deliberations for a later date. Clarke contends that this action violated § 36-14-13 (8). This section, which at the time of the alleged misconduct was designated as §36-14-13 (d)(6), requires the commission "[a]t the conclusion of proceedings" to "immediately begin deliberations." The record reveals that the testimony concluded on June 21, 1996. However, the proceedings were not completed until the closing statements were presented. The commission's docket sheet indicates that Clarke filed his closing argument on "07/00/96." A later entry on the same docket reveals that Healey sent his statement to the commission on "07/02/96." The commission, in its decision, indicates that it deliberated on the matter on July 11, 1996. Thus, the commission failed to deliberate "immediately" as required by former § 36-14-13 (d)(6). However, the court can discern no prejudicial effect on Clarke's substantial rights by the actions of the commission and, had Clarke's appeal rested on this claim alone, would be compelled to affirm the decision of the commission.
Clarke's final contention is that the commission's decision was clearly erroneous in view of the substantial evidence on the record. A review of the record reveals that had the commission properly amended the complaint and, in a timely fashion, "completed its investigation," the commission had before it substantial evidence of violations of the Code of Ethics. Clarke, as a member of the Engineering Board, was well aware of the investigation into Salem's activities and, in particular, of the previous warnings issued to him regarding his testimony as an "expert" before zoning boards. Clarke's firm, Commonwealth Engineering, was engaged by the construction manager on the Chelo's project during the time that Salem was hired to conduct the traffic impact study on that project. On February 15, 1993, Deidre Paiva (Paiva), an employee of Commonwealth Engineering, wrote to the Chelo's construction manager and insisted that Commonwealth Engineering would perform the traffic study. Apparently the next day Paiva learned that Salem had been retained to prepare the report. Clarke testified that on or about February 17, 1993, Salem requested that Commonwealth Engineering accept his report and "stamp it" with a professional engineer's stamp since Salem himself was not authorized to so do. Clarke refused and instead informed Salem that Commonwealth Engineering would perform the traffic impact study and appear before the zoning board.
Undeterred, Salem stood ready to present his report to the Cumberland Zoning Board. On March 10, 1993, the Engineering Board convened, and Clark was in attendance. The minutes of the meeting reveal that the Engineering Board sent a "letter of clarification to an individual who is not registered in the state and is appearing as a traffic engineer." On the same date, a letter was forwarded to the Town Solicitor for the Town of Cumberland advising the municipality that Salem was not a registered engineer and could not present testimony before the zoning board as an expert in connection with traffic engineering or evaluations. As vice chair of the Board, Clarke would have received a copy of the correspondence. Richard Kirby, an assistant solicitor of the Town of Cumberland, testified that he reviewed this letter and subsequently advised the zoning board that Salem was not qualified to testify before it regarding the traffic impact study.
Ultimately Salem was removed from the Chelo's project and not compensated for the preparation of the report. Rather, Commonwealth Engineering prepared the report, and Paiva presented it before the zoning board. Though herself not an engineer, Paiva testified that she prepared the traffic study under Clark's supervision. Commonwealth Engineering collected $2,000 for the work.
The court would conclude that Clarke's actions violated §36-14-5 (a), § 36-14-7 (a), and § 36-14-5 (d) of the Code of Ethics, but for the fatal procedural deficiencies delineated above. The conclusion rests upon a determination that the violations were "knowing and willful." See former § 36-14-13
(d)(6)("At the conclusion of proceedings concerning * * * an alleged violation, the commission shall immediately begin deliberations on the evidence and then proceed to determine whether there has been a knowing and willful violation of this chapter"). Although the chapter is silent concerning the definition of "knowing and willful," the Rhode Island Supreme Court has stated:
 "[W]hen a violation of the statute is reasonable and made in good faith, it must be shown that the official `either knew or showed reckless disregard for the question of whether the conduct was prohibited by [the] statute * * *.' * * * Consequently an official may escape liability when he or she acts in accordance with reason and in good faith. We have observed, however, that it is `difficult to conceive of a violation that could be reasonable and in good faith.' * * * In contrast, when the violative conduct is not reasonable, it must be shown that the official was `cognizant of an appreciable possibility that he [might] be subject to the statutory requirements and [he] failed to take steps reasonably calculated to resolve the doubt.'" DiPrete v. Morsilli, 635 A.2d 1155, 1163-1164 (R.I. 1994). (Citations omitted.)
In the instant case, Clarke's conduct cannot be deemed to have occurred in accordance with reason or in good faith. Rather, the commission had before it substantial evidence that Clarke's actions were deliberate and unreasonable. The evidence on the record reveals that Clarke, by virtue of his official capacity as a member of the Engineering Board, was at least aware of an appreciable possibility that he would be subject to the provisions of the Code of Ethics if his firm replaced Salem as the traffic consultant on the Chelo's project. Clarke participated, for several years, in proceedings to reprimand Salem prior to the Chelo's job and sat on the Engineering Board during the proceedings that ultimately resulted in Salem's dismissal from the Chelo's project. Moreover, as a result of his official actions, Clarke had an expectation of monetary gain since he knew that Commonwealth Engineering would likely prepare the traffic impact study after Salem's removal.
The commission correctly found that Clarke had a choice:
 "If he chose to actively be involved in the investigation and enforcement action by the [Engineering] Board against [Salem], he should have declined any business for himself or his firm relating to the traffic study for the Chelo's project. Alternatively, if he chose to address his personal business interests, he should have recused as to all matters before the [Engineering] Board involving [Salem] and Chelo's during the time he and his company were performing services for that job. He did neither."
Because Clarke's actions were neither reasonable nor in good faith, because he failed to take steps to resolve the conflict, and since he had at least a reason to expect financial benefit from his actions as a member of the Engineering Board, the competent evidence on the record demonstrates a "knowing and willful" violation of § 36-14-5 (a), § 36-14-7 (a), and § 36-14-5 (d) of the Code of Ethics. See DiPrete, 635 A.2d at 1164 (affirming imposition of civil penalty for violation of Code of Ethics when the defendant, as chief executive, "was at least aware of an appreciable possibility that he might be subject to the statutory requirements" and "failed to take any steps to resolve that problem"). (Emphasis in original.) Although the violations addressed in DiPrete concerned § 36-14-5 (a) and § 36-14-7 (a), the court finds that the above standard would apply to an alleged violation of § 36-14-5 (d) since the "knowing and willful" provision set forth in former §36-14-13 (d)(6) is applicable to this section.
III
Because Clarke's substantial rights were prejudiced by the commission's failure to properly amend the complaint to include the charges against him and the subsequent failure to complete its investigation with the time prescribed by § 36-14-12 (c), the commission's decision is reversed.
Counsel shall prepare the appropriate order for entry of judgment.